[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 11, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16482
Non-Argument Calendar

_____

D. C. Docket No. 06-00205-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN KLARELL WASHINGTON,
a.k.a. Tank,

Defendant-Appellant.

_____

No. 06-16483
Non-Argument Calendar

_____

D. C. Docket No. 06-00205-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAVONNIA WASHINGTON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

**(September 11, 2007)**

Before BIRCH, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Kevin Klarell Washington ("Kevin") and

Lavonnia Washington ("Lavonnia") appeal their sentences imposed after pleading

guilty to distributing crack cocaine (Kevin), sending a false distress signal to the

United States Coast Guard (Kevin), and making false declarations before a grand

jury (Lavonnia). For the reasons that follow, we affirm.

## I. BACKGROUND

### A. Offense Conduct

In July 2006, a federal grand jury indicted Kevin and his wife Lavonnia in a

ten-count indictment. Pursuant to a written plea agreement, Kevin pleaded guilty

to one count of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1),

and one count of sending a false distress message to the Coast Guard, in violation of 14 U.S.C. § 88(c). Lavonnia pleaded guilty to making false declarations before a grand jury, in violation of 18 U.S.C. § 1623.

According to the presentence investigation reports ("PSI"), a confidential informant purchased crack cocaine from Kevin in Savannah, Georgia on five occasions between late 2004 and early 2005. In August 2005, agents with the Drug Enforcement Administration ("DEA") traveled to the Washingtons' home and seized two vehicles that had been used to facilitate drug sales. The next day, the Washingtons met with DEA agents and learned that evidence would soon be presented to the grand jury regarding Kevin's involvement in selling crack cocaine. The agents offered Kevin the opportunity to assist in the DEA's investigation of other suspects. Kevin asked for time to consider the offer.

On September 13, 2005, Lavonnia's brother, Timothy Sapp, initiated an emergency distress call to the Coast Guard and reported that Kevin had fallen overboard from a fishing vessel into the Wilmington River. Over the next 48 hours, the Coast Guard conducted an extensive search for Kevin, using boats, helicopters, and an airplane, but they did not find Kevin. The Coast Guard expended a total of $314,019 during the unsuccessful search. On September 28, 2005, Lavonnia contacted the DEA and solicited the agency to pay $33,000 for a

3

diver to continue to search for Kevin's body. The DEA refused.

On October 1, 2005, a memorial service was held for Kevin at a church in Savannah. Several friends and family members spoke about Kevin, and after the ceremony, the family placed a wreath in the Wilmington River to memorialize his life.

Federal agents, however, remained suspicious of the timing and circumstances of Kevin's disappearance. Believing that Kevin was still alive, agents with the Coast Guard served Sapp a subpoena to appear before a federal grand jury in Savannah. In response, Sapp admitted to the agents that Kevin had staged his death by jumping off of the fishing vessel and boarding the boat of a friend who transported him ashore. Once Kevin reached the shore, he was driven by friends and family to Columbia, South Carolina, where he stayed for two weeks in a motel room rented for him by Lavonnia. Sapp then drove Kevin from Columbia to Yemassee, South Carolina, where he was reunited with Lavonnia. Thereafter, Kevin traveled to Virginia and then to Orlando, Florida. At some point, he assumed a false identity using forged documents.

On June 9, 2006, Lavonnia testified before the grand jury that she believed Kevin was dead and that she had not seen him since several days before the September 2005 accident.

4

Kevin was ultimately captured and arrested in Orlando, Florida on June 21, 2006.  After Kevin's arrest, Lavonnia admitted that she had always known Kevin was alive and that she had seen him since the feigned boating accident.

## B.  Kevin's Sentence

In the PSI, the probation officer calculated Kevin's offense level for the cocaine-distribution offense as 34, including a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.  Finding U.S.S.G. § 2B1.1 (which pertains to economic offenses) to be the most appropriate Guideline for Kevin's false-distress-signal offense, the probation officer assessed Kevin's offense level as 18, including a 12-level enhancement for the $314,019 amount of loss incurred by the Coast Guard.  Pursuant to U.S.S.G. § 3D1.2, Kevin's offenses were grouped together, resulting in an adjusted offense level for the group of 34 (as the highest adjusted offense level of the offenses in the group).  The probation officer then assessed a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), resulting in a total offense level of 31.

Regarding Kevin's criminal history, the probation officer stated that Kevin was sentenced to six years' probation on July 26, 1995 in state court after he pleaded guilty to cocaine possession.  That probation was revoked upon Kevin's arrest for marijuana possession in February 1996, and he was imprisoned for 60

5

days.  In November 1999, Kevin was arrested for selling cocaine, and on April 7, 2000, he pleaded guilty to the sale of a controlled substance and possession of a controlled substance with intent to distribute.  On that same day, Kevin's probation for his 1995 cocaine-possession conviction was revoked for the balance of the term, which the probation officer calculated as "one year, three months, and 19 days."  In an addendum to the PSI, the probation officer acknowledged that there were no state court records documenting precisely what constituted "the balance" of Kevin's probation at the time of the April 2000 revocation.  Given the unavailability of the record, the probation officer "simply subtracted the amount of time [Kevin] had served on probation from the amount of time originally imposed."  Because the calculated term of imprisonment exceeded one year and one month, the probation officer assigned three criminal history points, pursuant to U.S.S.G. § 4A1.1(a).

The probation officer also assessed one criminal history point each for Kevin's 1997 conviction for driving with a suspended license and his 1998 conviction for obstruction of a law enforcement officer by providing false information.[1]  Kevin was thus assigned a total of 11 criminal history points, resulting in a criminal history category of V.  With a total offense level of 31 and a

---

[1] Kevin was sentenced to one year of probation for each of these convictions.

criminal history category of V, Kevin's Sentencing Guidelines imprisonment range was 168 to 210 months.

Kevin raised several objections to the PSI. As relevant to the instant appeal, Kevin objected to: the two-level enhancement for obstruction of justice; the three criminal history points assessed for his previous conviction for cocaine possession; the criminal history point assessed for his 1997 conviction for driving with a suspended license; and the criminal history point assessed for his 1998 conviction for obstruction of a law enforcement officer. Kevin also asserted that he should receive a downward departure pursuant to U.S.S.G. § 5K2.0 because his cocaine-distribution offense had no victim and the advisory Guidelines range was unduly harsh, as it reflected the sentencing disparity between crack and powder cocaine.

At the sentencing hearing, Kevin reiterated his objections to the PSI and, for the first time, argued that the two-level enhancement for obstruction of justice constituted double punishment because he had agreed to pay approximately $314,019 in restitution pursuant to his plea agreement. The district court summarily overruled all of Kevin's objections and found Kevin's Guidelines range to be 168 to 210 months' imprisonment. After hearing argument from counsel, a statement from Kevin, and statements from several of Kevin's friends and family members, the court sentenced him to 188 months' imprisonment. In imposing the

sentence, the court discussed the "ruse" Kevin staged to evade authorities (that is, faking his death), the costs borne by the resource-strapped Coast Guard as a result of that ruse, and Kevin's long-time involvement in the sale and use of drugs. The court also noted "the statutory factors set in 18 U.S.C. [§] 3553(a)."

### C. Lavonnia's Sentence

The probation officer assigned Lavonnia a base offense level of 14, pursuant to U.S.S.G. § 2J1.3. The probation officer then assessed a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), resulting in a total offense level of 12. With an offense level of 12 and a criminal history category of II, Lavonnia's Guidelines imprisonment range was 12 to 18 months. Lavonnia raised no objections to the PSI, but she submitted a statement to the court requesting a downward departure based on her need to care for her young child.

At the sentencing hearing, Lavonnia reiterated her request for a downward departure, asserting that her father had recently died, her mother was financially and physically dependent on her, and her young son had no other competent caregiver.

Before pronouncing the sentence, the district court made several statements regarding Lavonnia's conduct. As to Lavonnia's request that the DEA pay approximately $33,000 for a diver to continue searching for Kevin approximately

8

two weeks after his disappearance, the court stated that "the most egregious conduct in the whole unfolding of the conspiracy, to have the cheek, the audacity to go and ask for more money to further a search that she knew and she had conspired with, and knew it was bogus from the outset." Regarding the plea agreement, the district court stated that it "was a great benefit to [Lavonnia], not only from the advisory guidelines range, [which was] substantially lower than [it] would have been had she been convicted of all counts in the indictment[,]" but "[r]estitution cannot be ordered to the United States Coast Guard for criminal conduct in which [Lavonnia] played a significant part." And regarding Lavonnia's motion for a downward departure, the court stated "I noticed the egregious conduct of this defendant who had considerably above-average earnings, and her pursuit of more investigation, and more money, and more resources to be committed to a hunt . . . that she knew was absolutely futile."

Accepting the calculations in the PSI, the court concluded that Lavonnia's total offense level was 12, her criminal history category was II, and her Guidelines imprisonment range was 12 to 18 months. The court also noted that the statutory maximum sentence for her offense was five years' imprisonment. Stating that "her conduct in this instance merits that extra six months," the court sentenced Lavonnia to 24 months' imprisonment "[p]ursuant to the Sentencing Reform Act

9

of 1984." Lavonnia raised no objections to the sentence.

## II. STANDARDS OF REVIEW

We review for clear error the district court's findings of fact regarding the imposition of an enhancement and the assessment of criminal history points under the Sentencing Guidelines. United States v. Rubio, 317 F.3d 1240, 1244 (11th Cir. 2003); United States v. Hernandez-Martinez, 382 F.3d 1304, 1306 (11th Cir. 2004). "[W]hen a defendant challenges a factual basis of his sentence, the government has the burden of establishing the disputed fact by a preponderance of the evidence." United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004) (quotation marks omitted). "It is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." United States v. Bernardine, 73 F.3d 1078, 1080 (11th Cir. 1996).

We review de novo the "district court's interpretation of the Guidelines and its application of the Guidelines to the facts." United States v. McGill, 450 F.3d 1276, 1278 (11th Cir. 2006).

We review the ultimate sentence imposed for reasonableness, in light of the record and the factors set forth in 18 U.S.C. § 3553(a). United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Our "[r]eview for reasonableness is deferential[,]" and "the party who challenges the sentence bears the burden of

10

establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Id.

And we review issues raised for the first time on appeal for plain error. See United States v. Shelton, 400 F.3d 1325, 1328 (11th Cir. 2005).

## III. DISCUSSION

In this consolidated appeal, Kevin argues that the district court erred by imposing: (1) a two-level enhancement for obstruction of justice; (2) one criminal history point each for his 1997 conviction for driving with a suspended license and his 1998 conviction for obstructing a law enforcement officer; (3) three criminal history points for his 1995 drug-possession conviction; and (4) a sentence that is unreasonable. Lavonnia argues that the district court erred by failing to give her notice that it was contemplating an upward departure. We address each argument in turn.

### A. Enhancement for Obstruction of Justice

Pursuant to § 3C1.1, a defendant's offense level may be increased by two levels if the court finds that:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . .

11

U.S.S.G. § 3C1.1. Application Note 5 accompanying § 3C1.1 provides that "avoiding or fleeing from arrest" is a type of conduct that "*ordinarily*" does not warrant application of this enhancement. Id. § 3C1.1, comment. (n.5(e)) (emphasis added). Accordingly, in United States v. Alpert, this court held that "successfully avoiding arrest, *alone*, does not warrant an enhancement for obstruction of justice. . . . [T]he § 3C1.1 enhancement does not apply to persons engaged in criminal activity who learn of an investigation into that activity and simply disappear to avoid arrest, *without more*." 28 F.3d 1104, 1107 (11th Cir. 1994) (emphasis added). But the obstruction enhancement may be warranted if the defendant "engaged in *additional conduct* while avoiding arrest, . . . particularly if that conduct significantly hindered the investigation or prosecution of [his] offenses." Id. (emphasis added).

Kevin first argues that because both the two-level obstruction enhancement *and* the restitution order were imposed as a result of his false-distress-signal offense (what Kevin terms, "the obstructive offense"), he has received "double punishment" for the same conduct. He argues that the restitution order "punished [him] independently for the obstructive conduct" because his "conviction for false distress signal under 14 U.S.C. § 88(c) is what triggered the restitution." According to Kevin, this "result contradicts Application Note 7 which directs no

12

further adjustment for obstruction unless significant further obstruction occurred," and "there was no significant further obstruction." We are unpersuaded.

The obstruction enhancement did not constitute "double punishment" because the purpose of restitution under 14 U.S.C. § 88(c) is not to punish, but to compensate the Coast Guard for the resources it expended in responding to Kevin's false distress call. See United States v. James, 986 F.2d 441, 444 (11th Cir. 1993) ("[T]he cost provision in 14 U.S.C. § 88(c) requires that [the defendant] be held liable for all costs the Coast Guard incurred in responding to [the defendant's] false distress message."). Moreover, the conduct supporting the obstruction enhancement—sending a false distress signal, faking his death, fleeing to South Carolina, holding a funeral service in which he was eulogized by friends and family, assuming a false identity using forged documents, and evading federal authorities for approximately eight months—constituted much more than the mere act of "sending a false distress signal" and was *not* fully accounted for in the restitution Kevin was ordered to pay under 14 U.S.C. § 88(c). Rather, the obstruction enhancement reflects (and punishes) the series of actions in which Kevin directed and participated as part of his elaborate ruse to evade federal authorities and stymie their investigation.

Furthermore, Kevin's reliance on Application Note 7 is misplaced.

13

Although Application Note 7 provides that an obstruction enhancement may not be applied to an obstruction offense, U.S.S.G. § 3C1.1, comment. (n.7), here, the obstruction enhancement was applied to Kevin's cocaine-distribution offense. Thus, even assuming Kevin's false-distress-signal offense constitutes an "obstruction offense," the obstruction enhancement was *not* applied to this offense.[2]

Kevin next argues that his "flight itself was insufficient to support" the enhancement, and he cites Application Note 5 and <u>Alpert</u> to support this contention. He also asserts that there "may have been other motives" for his flight, including fear of other drug dealers who may have known that he was considering cooperating with federal officials. To that end, he argues that he did not possess the mens rea required under the Guidelines because he did not "willfully" obstruct justice. Again, we are unpersuaded.

First, although Application Note 5 provides that "avoiding or fleeing from

---

[2] As discussed above, Kevin's offense level for the cocaine-distribution offense was calculated as 34, including the two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. Kevin's offense level for sending a false distress signal was calculated as 18, including a 12-level enhancement for the $314,019 amount of loss incurred by the Coast Guard, pursuant to § 2B1.1(b)(1)(G). Thus, an enhancement for obstruction of justice was *not* applied to the false-distress-signal offense. Pursuant to § 3D1.2, Kevin's cocaine-distribution offense was grouped with his false-distress-signal offense, resulting in an adjusted offense level for the group of 34 (which is the highest adjusted offense level of the two offenses in the group). See U.S.S.G. § 3D1.2(a)-(c). Kevin's offense level was then reduced by three levels assessed for his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), resulting in a total offense level of 31.

14

arrest" "*ordinarily*" does not warrant application of the § 3C1.1 enhancement, it does not entirely foreclose the application of this enhancement, especially where the conduct at issue involved *more* than merely "avoiding or fleeing from arrest." See id. § 3C1.1, comment. (n.5(e)). And although we held in Alpert that the obstruction enhancement does not apply to persons who learn of an investigation into their criminal activity "and simply disappear to avoid arrest, *without more*," we also held that the obstruction enhancement may be warranted if the defendant "engaged in *additional conduct* while avoiding arrest, . . . particularly if that conduct significantly hindered the investigation or prosecution of [his] offenses." Alpert, 28 F.3d at 1107 (emphasis added). Contrary to his assertions, Kevin did "more" than "simply disappear to avoid arrest." Kevin not only sent a false distress signal to the Coast Guard, he faked his death, fled the state of Georgia, had his wife and others hold a memorial service for him, assumed a false identity using forged documents, and evaded authorities for approximately eight months. Thus, Kevin "engaged in additional conduct while avoiding arrest," and this conduct significantly hindered the investigation and prosecution of his underlying offense (cocaine distribution). See id. As such, Kevin's reliance on Application Note 5 and Alpert is misplaced.

We also reject Kevin's argument that he lacked the mens rea of "willfulness"

15

required under the Guidelines. The timing of Kevin's feigned death, his subsequent efforts to evade law enforcement (for example, assuming a false identity by using forged documents, and fleeing to South Carolina, Virginia, and ultimately to Florida), his family's ongoing cover-up of the ruse, and the substantial degree of planning required to execute the ruse all create a strong inference that Kevin "willfully" obstructed and impeded the Government's efforts to investigate and prosecute him for his cocaine-distribution activities. That Kevin's actions may *also* have been motivated by his fear of other drug dealers is of no moment.

### B. Criminal History Points for Driving with a Suspended License & Obstructing Law Enforcement by Providing False Information

Section 4A1.1 of the Sentencing Guidelines sets forth the number of criminal history points to assign to certain prior convictions based on a variety of factors, including the length of imprisonment imposed. U.S.S.G. § 4A1.1; United States v. Glover, 154 F.3d 1291, 1293 n.3 (11th Cir. 1998). Under § 4A1.1(a), the district court must assess three criminal history points for each prior sentence of imprisonment exceeding one year and one month. U.S.S.G. § 4A1.1(a). Pursuant to § 4A1.1(b), the district court must assign two criminal history points for each prior sentence of imprisonment of at least 60 days that is not counted in § 4A1.1(a). Id. § 4A1.1(b). And under § 4A1.1(c), one criminal history point is to

16

be added for each prior sentence that is not included in § 4A1.1(a) and § 4A1.1(b). Id. § 4A1.1(c). Sentences imposed for certain enumerated offenses, such as "[d]riving without a license or with a revoked or suspended license" and providing "[f]alse information to a police officer[,]" are counted "only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." Id. § 4A1.2(c)(1).

"A conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)." Id. § 4A1.2(a)(3). To that end, Application Note 2 accompanying § 4A1.1 provides that "[f]or the purposes of applying § 4A1.1(a), (b), or (c), the length of a sentence of imprisonment is *the stated maximum* . . . . That is, criminal history points are based on the sentence *pronounced*, not the length of time actually served." Id. § 4A1.2, comment. (n.2) (emphasis added). Thus, for example, in United States v. Baker, 116 F.3d 870 (11th Cir. 1997), following the defendant's conviction in state court for writing worthless checks, the state court sentenced him to one year of probation, contingent upon his paying the assessed fees. Id. at 873. This court applied the "stated maximum" rule and held that "the length of the probationary sentence *received by*" the defendant "is—for the purpose of computing his criminal

17

history score—one year, the 'stated maximum.'" Id. at 874 (emphasis added).

Here, the PSI states that Kevin pleaded guilty to driving with a suspended driver's license in 1997, and he was sentenced to 12 months' probation and ordered to pay a $400 fine. The PSI also states that in 1998, Kevin pleaded guilty to obstructing a law enforcement officer by providing false information, and he was given a suspended sentence of 12 months' probation and ordered to pay a $150 fine. Kevin was assessed one criminal history point for each of these offenses.

Kevin asserts that the one year of probation imposed following his 1997 conviction for driving with a suspended license was contingent on payment of a fine, and once he paid the fine, the probation was terminated. He further asserts that the state court suspended the one year of probation imposed following his 1998 conviction for obstructing a law enforcement officer by providing false information. Thus, according to Kevin, because he did not actually serve the probation imposed for either the 1997 or the 1998 convictions, the assessment of a criminal history point for each of these convictions was in error. We disagree.

As stated above, the Guidelines provide that sentences imposed for driving "with a revoked or suspended license" and providing "[f]alse information to a police officer[,]" are counted in assessing criminal history points if, *inter alia*, "the

18

sentence was a term of probation of at least one year." U.S.S.G. § 4A1.2(c)(1).

And "criminal history points are based on the sentence *pronounced*, not the length

of time actually served." Id. § 4A1.2, comment. (n.2) (emphasis added); Baker,

116 F.3d at 873 n.6 ("[T]he relevant inquiry is what sentence was *imposed*, not

what sentence was actually *served*."). Because the sentence actually *pronounced*

following each of the offenses at issue was one year of probation, the assessment

of one criminal history point for each of these offenses was not erroneous. That

Kevin may not have actually served one year of probation for these offenses is

irrelevant. See Baker, 116 F.3d at 873 n.6.

### C. Criminal History Points for Cocaine Possession

As discussed above, pursuant to U.S.S.G. § 4A1.1(a), the district court must

assess three criminal history points for each prior sentence of imprisonment

exceeding one year and one month, and under § 4A1.1(b), the district court must

assign two criminal history points for each prior sentence of imprisonment of at

least 60 days that is not counted in § 4A1.1(a). U.S.S.G. § 4A1.1(a), (b).

On appeal, Kevin argues that the assignment of three criminal history points

for his 1995 cocaine-possession conviction is "speculative" because there is no

record evidence that he served more than one year and one month in prison as a

result of this conviction. Kevin states that as a result of his 1999 arrest for selling

19

cocaine, in April 2000, he was convicted of selling and distributing cocaine in violation of state law, and he was sentenced to six years and six months of imprisonment. He contends that the probation imposed for his 1995 conviction was revoked following his 2000 convictions, and "[t]he time served for revocation was served concurrently with the sentence" imposed for these convictions. In support of this contention, Kevin submits a document from the Superior Court of Chatham County, Georgia, which shows that on April 7, 2000, his probation was revoked "in full," and the time to be served upon revocation would "run concurrent" with the sentence imposed for his 2000 convictions. According to Kevin, however, there is "no other specific evidence" regarding how much time he actually served in prison as a result of his 1995 cocaine-possession conviction, and absent "specific information" regarding "the exact amount of time served" following the April 2000 revocation, "it is impossible to know how many criminal history points should be assessed."

We need not address these arguments, however, because even had the Government failed to establish that the balance of Kevin's 1995-imposed probation exceeded one year and one month at the time of the April 2000 revocation, the resulting error was harmless, as Kevin's Guidelines imprisonment range would remain unchanged. Kevin does not dispute that he was confined for 60 days

following a 1996 revocation of his 1995-imposed probation. And, pursuant to

§ 4A1.1(b), the district court must assign two criminal history points for each prior

sentence of imprisonment of at least 60 days. U.S.S.G. § 4A1.1(b). Thus, even

excluding the April 2000 revocation, the 60 days of imprisonment Kevin served

pursuant to the 1996 revocation would result in the assessment of two criminal

history points. Kevin would therefore have 10 total criminal history points, which

would result in a criminal history category of V, as the district court determined.

See U.S. Sentencing Guidelines Manual, ch. 5, pt. A (2006) (Sentencing Table).

As such, Kevin's Guidelines imprisonment range would remain unchanged at 168

to 210 months. See id. Accordingly, even had the district court erred in assessing

three criminal history points for the 1995 cocaine-possession offense, the error was

harmless.

### D. Reasonableness of Kevin's Sentence

After United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d

621 (2005), sentencing requires two steps. "First, the district court must consult

the Guidelines," which, "at a minimum, obliges the district court to calculate

*correctly* the sentencing range prescribed by the Guidelines." United States v.

Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). The district court must then

impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C.

21

§ 3553(a).  Talley, 431 F.3d at 788.  These factors include: the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1); the history and characteristics of the defendant, id.; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, id. § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, id. § 3553(a)(2)(B); the need to protect the public from further crimes of the defendant, id. § 3553(a)(2)(B); and the Guidelines imprisonment range, id. § 3553(a)(4)(A).  Although sentencing courts must be guided by these factors, the district court is not required to state on the record that it has explicitly considered each of these factors or to discuss each of these factors.  United States v. Thomas, 446 F.3d 1348, 1357 (11th Cir. 2006).  Moreover, "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court[,]" and "[w]e will not substitute our judgment in weighing the relevant factors."  United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006) (citations omitted).

Kevin argues that his sentence is unreasonable in light of Booker and § 18 U.S.C. § 3553(a) because "[a] substantially lesser sentence would definitely comply with the purposes of sentencing and would be more than adequate to deter

this type of misconduct."[3]  We disagree.

First, as we concluded above, the district court correctly calculated Kevin's Guidelines imprisonment range as 168 to 210 months.  Moreover, noting "the statutory factors set in 18 U.S.C. [§] 3553(a)," the court discussed Kevin's history of drug use, his past participation in drug sales, the death "ruse" he staged to evade authorities, and the costs incurred by the Coast Guard during its efforts to search for him upon receiving the false distress signal.  Thus, it is clear that, in accordance with Booker, the court discussed and considered Kevin's history and characteristics, see 18 U.S.C. § 3553(a)(1), the nature and circumstances of the offense, see id., the seriousness of the offense, see id. § 3553(a)(2)(A), and the need to afford adequate deterrence to criminal conduct, see id. § 3553(a)(2)(B). And although a sentence within the Guidelines range is not per se reasonable, when, as here, "the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one."[4]  Talley, 431

---

[3] Kevin also argues that the district court erred by denying his motion for a downward departure because his criminal history score over-represents the seriousness of his criminal history, and the Guidelines' 100-to-1 ratio between crack and powder cocaine is unduly harsh. Because nothing in the record suggests that the district court believed it lacked the authority to downwardly depart, we lack jurisdiction to review the court's refusal to do so.  See United States v. Dudley, 463 F.3d 1221, 1228 (11th Cir. 2006); United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005).

[4] In this circuit, we do not presume that a sentence within the properly calculated Guidelines range is reasonable.  See United States v. Hunt, 459 F.3d 1180, 1185 (11th Cir. 2006).  "Recently, however, the U.S. Supreme Court upheld other circuits' decisions affording such a presumption, noting that a sentence, independently calculated by the district

F.3d at 788. We therefore conclude that Kevin has failed to carry his burden of establishing that the 188-month sentence is unreasonable.

## E. Upward Departure

Lavonnia argues that the district court erred by failing to give her notice that it was contemplating an upward departure before imposing sentence. Because Lavonnia did not raise this argument to the district court, we review it for plain error. See Shelton, 400 F.3d at 1328. Under the plain error standard, Lavonnia must show (1) error, (2) that is plain, (3) that affects her substantial rights, and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1329.

Rule 32(h) of the Federal Rules of Criminal Procedure requires the district court to give the parties "reasonable notice that it is contemplating a departure" from the applicable sentencing range "on a ground not identified for departure either in the presentence report or in a party's prehearing submission. . . ." Fed. R. Crim. P. 32(h). But this notice requirement does not apply to a sentence outside of the advisory Guidelines range as a result of the district court's imposition of a

court in accordance with Booker, that falls within the properly calculated Guidelines range 'significantly increases the likelihood that the sentence is a reasonable one.'" United States v. Campbell, 491 F.3d 1306, 1313 (11th Cir. 2007) (citing Rita v. United States, 551 U.S. ----, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)). "We recognize that the Court's rationale in Rita calls into question our reasons for not affording a presumption of reasonableness." Id. at 1314 n.8 (contrasting Rita, 127 S.Ct. at 2463-67, with Hunt, 459 F.3d at 1185).

variance in light of the factors set forth in 18 U.S.C.§ 3553(a). United States v. Irizarry, 458 F.3d 1208, 1212 (11th Cir. 2006), petition for cert. filed, (U.S. Oct. 26, 2006) (No. 06-7517). To that end, in Irizarry, this court held that "[a]fter Booker, parties are inherently on notice that the sentencing guidelines range is advisory" and "cannot claim unfair surprise or inability to present informed comment . . . when a district court imposes a sentence above the guidelines range based on the section 3553(a) sentencing factors." Id.

Here, it is clear that the district court did not impose a Guidelines "departure," rather, the court imposed a *variance*—an above-the-Guidelines sentence based upon its consideration of the factors set forth in § 3553(a). First, the district court did not cite to a specific Guidelines departure provision. See United States v. Eldick, 443 F.3d 783, 788 n.2 (11th Cir.), cert. denied, --- U.S. ----, 127 S.Ct. 251, 166 L.Ed.2d 196 (2006). Second, during the sentencing hearing, the district court's discussion of Lavonnia's "egregious" act of requesting "more money to further a search that she knew" to be "bogus from the outset," even though she "had considerably above-average earnings" indicates that the court considered the nature and circumstances of the offense, see 18 U.S.C. § 3553(a)(1), and Lavonnia's history and characteristics, see id. The court also stated that Lavonnia's "conduct in this instance merits that extra six months";

25

Lavonnia had received a "great benefit" from her plea agreement because restitution could not be ordered to the Coast Guard "for criminal conduct in which [Lavonnia] played a significant part"; and "the advisory guidelines range" is "substantially lower" than had Lavonnia been convicted of all counts in the indictment. The court also noted that the statutory maximum sentence for Lavonnia's offense is five years' imprisonment. These statements demonstrate that the court considered the seriousness of Lavonnia's offense, see id. § 3553(a)(2)(A), and the advisory Guidelines range, see id. § 3553(a)(4). Thus, rather than impose a Guidelines departure, the district court exercised its post-Booker discretion to impose a reasonable sentence outside the Guidelines range because it concluded that a sentence inside of that range was inadequate. Because the district court did not impose a Guidelines departure, it was under no obligation to give Lavonnia advance notice under Rule 32(h). See Irizarry, 458 F.3d at 1212.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentences.