PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-4456

_____

D. C. Docket No. 95-8099-CR-DTKH

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/17/98
THOMAS  K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT J. GLOVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 17, 1998)**

Before EDMONDSON and BARKETT, Circuit Judges, and ALARCÓN[*], Senior Circuit Judge.

_____
[*]Honorable Arthur L. Alarcón, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

BARKETT, Circuit Judge:

Robert Glover appeals his seventy-seven-month sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In calculating Glover's sentence under the federal Sentencing Guidelines,[1] the district court agreed with the probation department that Glover's criminal record included "at least two prior felony convictions of either a crime of violence or a controlled substance offense," which resulted in a base offense level of twenty-four under U.S.S.G. § 2K2.1(a)(2). The two prior convictions on which the probation department relied were Glover's 1986 conviction for possession of cocaine with intent to distribute and his 1982 conviction for burglary. It is the counting of the 1982 burglary conviction as a "prior felony conviction of . . . a crime of violence" that Glover challenges in this appeal.[2]

---

[1]Because Glover was sentenced for the firearm offense in February 1997, we refer to the 1995 version of the Guidelines.

[2]

Because Glover was under the age of eighteen when he committed the burglary offense, it can only be counted as a prior felony conviction under § 2K2.1(a)(2) if Glover "was convicted as an adult and received a sentence of imprisonment exceeding one year and one month." U.S.S.G. §§ 4A1.2(d)(1).[3]  It is undisputed that Glover was treated as an adult in the Florida state

_____

[3]As used in § 2K2.1, the term "'prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year," and "[a] conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." U.S.S.G. § 4B1.2 comment. (n.3).  The Commentary to § 2K2.1 further specifies that to determine a defendant's total number of prior felony convictions, the sentencing court should consider only those convictions that receive criminal history points under § 4A1.1. See U.S.S.G. § 2K2.1 comment. (n.5).  Section 4A1.1 assigns criminal history points for certain prior convictions based on a variety of factors, including the length of the sentence of imprisonment imposed.  With respect to offenses prior to the age of eighteen, if the defendant was released from confinement more than five years prior to his commencement of the instant offense, the prior conviction only receives criminal history points if the defendant's sentence of imprisonment exceeded one year and one month. See U.S.S.G. § 4A1.2(d).  Although the record does not reveal the precise date of Glover's release from jail, as of March 29, 1984, Glover had only 243 days left to serve on his burglary conviction.  Absent any suggestion to the contrary, we assume that Glover was released on schedule sometime in late November 1984, significantly more than the requisite five years prior to June 5, 1995, the date on which he committed the instant firearm possession offense.  Accordingly, the burglary conviction can only be assigned criminal history points – and thus can only be counted as a prior felony conviction for a crime of

9

court. Thus, the question presented here is whether the sentence of imprisonment imposed exceeded the one year and one month threshold.

Glover pled guilty in state court to the burglary offense in December 1982 and was sentenced to three years of probation. Although Glover's original sentence included no jail time, he was twice sentenced to a term of imprisonment for violating his probation. The first violation resulted in an "Order of Modification of Probation," extending his probation by one year, and requiring, as a condition of probation, that Glover serve ninety days in the county jail, with credit for the thirty-six days he had been incarcerated following his arrest on the violation warrant. After a subsequent violation hearing on Glover's additional probation violations, the state court revoked Glover's probation and sentenced him to a 364-day jail term, with credit for the 121 days he had already served. This 121-day period reflected the ninety days Glover had spent in jail pursuant to the trial court's modification order as well as the time he had spent in jail while awaiting the second probation violation hearing.

The district court calculated Glover's total sentence of incarceration for the burglary offense pursuant to § 4A1.2(k)(1)[4] by adding the ninety days required by the modification of probation order to the 364-day jail term imposed in the subsequent revocation order, for a total of 454 days, thus qualifying the offense as a "prior felony conviction of . . . a crime of violence" under § 2K2.1.

_____

violence under § 2K1.2 – if Glover's total sentence of imprisonment for that offense exceeded one year and one month. See id.

[4]Section 4A1.2(k)(1) provides that to calculate the defendant's total term of imprisonment "[i]n the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation." U.S.S.G. § 4A1.2(k)(1).

10

**DISCUSSION**

**I.**

Glover first contends that because his probation was only actually revoked once – when the state trial court issued its revocation order following the second probation violation hearing – only the 364-day jail term imposed pursuant to that order should be counted under § 4A1.2(k)(1). In support of his "plain meaning" reading of § 4A1.2(k)(1), Glover asserts that treating the state trial court's modification order as a partial revocation of probation effectively ignores the distinction the Sentencing Guidelines elsewhere draw between the revocation of probation and the extension of a term of probation. See U.S.S.G. § 7B1.3(a)(2) (giving the sentencing court discretion to either "revoke probation . . . or extend the term of probation" upon finding a particular type of violation). Glover also maintains that if the Sentencing Commission had intended for § 4A1.2(k)(1) to include modifications of probation, that section would refer to violations, not revocations, of probation. Finally, Glover argues that, at a minimum, the Guidelines are ambiguous, and that, in light of this ambiguity, the district court should have followed the rule of lenity in sentencing Glover, thus excluding the modification order from the calculation of Glover's total sentence of imprisonment.

In United States v. Reed, 94 F.3d 341 (7th Cir. 1996), on which the government primarily relies, the defendant challenged the district court's application of § 4A1.2(k) with respect to his conviction for the offense of robbery. Although the defendant had originally been sentenced to a six-month prison term to be followed by a four-year term of probation, he subsequently violated his probation on two occasions and was sentenced to a sixty-nine-day and a 249-day jail term, respectively. In determining the defendant's total sentence of imprisonment for the burglary offense pursuant to § 4A1.2(k), the district court added both the sixty-nine-day and the 249-day jail terms

11

to the defendant's original six-month sentence. On appeal, the defendant argued that neither of the

sentence imposed as a result of his probation violation

13

s

s

h

o

u

l

d

h

a

v

e

b

e

e

n

u

s

e

d

t

o

c       a       l       c       u       l       a

t

e

h

i

s

t

o

t

a

l

s    e    n    t    e    n    c

e

f

o

r

t

h

e

r    o    b    b    e    r    y

o    f    f    e    n    s    e

b    e    c    a    u    s    e

"

h

i

s

p    r    o    b    a    t    i

o

n

h

a

d

n

e

v

e

r

a    c    t    u    a    l    l

y

b

e

e

n

r    e    v    o    k    e    d

a

s

r    e    q    u    i    r    e

d

b

y

t

h
e
g u i d e l i
n
e
.
"

I
d
.

a
t
3
4
3
.
O b s e r v i
n
g
t
h
a

17

t "[l]ike any other federal statue, the [Sentencing] Guideline

smustbeinterpretedinaccordancewithfederall

a
w
'
e
v
e
n
w
h
e
n
t
h
o
s
e

G        u        i        d        e        l        i

n
e
s
r
e
f
e

r to some event occurring in state court, "t

he Seventh Circuit initially rejected the defendant's contention tha

22

t

the federal courts "should look to state

l

a

w

i

n

d      e      t      e      r      m      i

n

i

n

g

w

h

a

t

c      o      n      s      t      i      t

u

t

e

s

a

‘      r      e      v      o      c      a

t

i

o

n

o

f

p r o b a t i

o

n

.

'

"

I

d

.

a

t

3

4

4

.

T

h

e

c

o

u

r

t

t

h

e

n

p     r     o     c     e     e     d

e

d

t

o

i     n     t     e     r     p     r

e

t

t

h

e

p

h

r

a

s

e

"revocation of probation" as a matter of

federal law. Remarking that the purpose of § 4A1.2(k)'s aggregation rule is to "limit[] the number of criminal history points that may be assigned to a single conviction . . . , even if the defendant served multiple prison sentences on that conviction due to violations of his probation," id., the court concluded that "the finding of a probation violation coupled with a time-served imprisonment sentence and a resentencing to probation constitutes a 'revocation of probation' under section 4A1.2(k)(1)," id. at 345.

Similarly, in United States v. Glidden, 77 F.3d 38 (2d Cir. 1996), the Second Circuit held that

28

> when a defendant has been given a suspended sentence of imprisonment and been placed on probation, and the court has thereafter, upon finding he violated probation, ordered him to serve a period of incarceration, we think it proper to view that order as at least a partial revocation of probation that falls within the scope of Guidelines § 4A1.2(k)(1).

Id. at 40. As in Glover's case, the defendant in Glidden had twice violated his probation, in response to which the state trial court had initially resentenced him to a term of incarceration plus probation and had subsequently revoked the defendant's probation entirely, again imposing a term of incarceration. In calculating the defendant's total sentence of imprisonment for the state offense under the federal Sentencing Guidelines, the district court had included both of the terms of incarceration imposed following the defendant's probation violations. On appeal, the Second Circuit rejected the defendant's argument that because his probation was not actually revoked until after his second probation violation, only the sentence imposed for that violation should have been included pursuant to § 4A1.2(k), noting that such an interpretation would be "contrary to the Guidelines' premise that '[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation,' and 'aggravate[s] the need for punishment with each recurrence.'" Id. (citing U.S.S.G. Ch. 4, Pt. A, intr. comment.).

We agree with the Second and Seventh Circuits that § 4A1.2(k)(1) contemplates that, in calculating a defendant's total sentence of imprisonment for a particular offense, the district court will aggregate any term of imprisonment imposed because of a probation violation with the defendant's original sentence of imprisonment, if any, for that offense. Accordingly, we reject Glover's contention that the ninety-day jail term imposed pursuant to the state trial court's modification order should not have been counted in calculating his total term of imprisonment pursuant to § 4A1.2(k)(1).

**II.**

29

We thus turn to Glover's alternative argument that even added together, the two jail terms imposed as a result of his probation violations do not amount to a sentence of imprisonment exceeding one year and one month. Glover maintains that, having been sentenced to a ninety-day jail term because of his first probation violation, and then to a 364-day jail term with credit for the original ninety-day sentence upon the subsequent revocation of his probation, his total sentence of incarceration was 364 days. The government responds that the district court properly treated the jail terms imposed as a result of Glover's probation violations as separate sentences, and thus was correct in adding the ninety-day to the 364-day term of imprisonment to calculate Glover's total sentence of imprisonment for the burglary offense.

The Sentencing Guidelines provide that "[t]he term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed." U.S.S.G. § 4A1.2(b)(1). The Commentary to § 4A1.2 clarifies that for purposes of determining the number of criminal history points that should be assigned to a particular conviction under § 4A1.1(a), (b), or (c), "the length of a sentence of imprisonment is the stated maximum . . . . That is, criminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2 comment. (n.2). Where part of a sentence of imprisonment was suspended, however, "'sentence of imprisonment' refers only to the portion that was not suspended." U.S.S.G. § 4A1.2(b)(2).

To determine a defendant's total sentence of imprisonment for purposes of the Guidelines, we agree with the Eighth Circuit that we look only to the language used in the sentencing court's judgments. See United States v. Urbizu, 4 F.3d 636, 639 (8th Cir. 1993); United States v. Drake, 942 F.2d 517, 518 (8th Cir. 1991). In both Urbizu and Drake, the defendant challenged the district court's assessment of criminal history points for a prior conviction where the district court had

30

assigned points based exclusively on the sentencing record. In <u>Urbizu</u>, the sentencing court's written judgment provided, in relevant part, that the defendant was to serve six months in a "jail type institution," to be followed by a five-year term of probation. <u>Urbizu</u>, 4 F.3d at 638. The defendant argued that because he had in fact served his term of confinement in a halfway house, this sentence did not qualify as a "sentence of imprisonment" under the federal Sentencing Guidelines. The Eighth Circuit rejected this argument, holding that where the sentencing "court's written judgment and [the defendant's] evidence describe the nature of his confinement differently[,] . . . a rule that relies on the language used in the sentencing court's judgment will better promote the purposes of Chapter 4 of the Sentencing Guidelines." <u>Id.</u> at 638-39. In <u>Drake</u>, the state court judgment reflected that the defendant had been sentenced to "'serve 78 days in Benton County jail with credit for 78 days already served.'" <u>Drake</u>, 942 F.2d at 518 (internal citation omitted). Although the defendant presented an affidavit from the state judge who had sentenced him, stating that "had [defendant] been free on bond, he would have sentenced [defendant] to only twenty days in jail, and that the only reason he entered judgment for seventy-eight days was because [defendant] had already served that number of days awaiting trial," the Eighth Circuit concluded that "the district court was correct in holding that the Guidelines require the court to look to the plain wording of the actual sentence imposed. . . . In this case, the most authoritative record of the prior sentence is the state court judgment, not the state court judge's affidavit stating the sentence he would have imposed." <u>Id.</u>

In this case, the sentencing documents in the record, upon which the district court must rely, reflect the following. As noted in part I, the first sentence of imprisonment imposed on Glover was ninety days pursuant to the modification order, notwithstanding the credit he received for thirty-six days served pending the violation hearing. <u>See</u> <u>United States v. Garin</u>, 103 F.3d 687, 690 (8th Cir.

31

1996) (where defendant had been "sentenced to 'sixty days . . . with credit for time served of two days,'" his total sentence of imprisonment was sixty days, not fifty-eight, as defendant had argued), cert. denied, 117 S. Ct. 1323 (1997). Glover's second sentence of imprisonment, imposed as a result of the revocation order, was 364 days, with credit for 121 days previously served. Although we cannot look outside the record sentencing documents, we must consider those documents in their totality. It is clear from the sentencing orders that the 121-day credit for time served included the ninety days imposed in the modification order, which we have counted above, and the thirty-one days Glover served while awaiting his second violation hearing.[5] The thirty-one days' credit for time served is part of Glover's sentence for the probation violations adjudicated at the second hearing and therefore must be counted. See id. However, the ninety days Glover served because of the first violation cannot now be counted a second time. Thus, the second sentence of imprisonment to be aggregated was 274 days.

---

[5]The sentencing record reflects that Glover was arrested for violating his probation on September 21, 1983, and that he remained incarcerated until October 27, 1983 when he posted bond. Glover pled guilty to the violation on January 3, 1984, and was sentenced to confinement "in the Palm Beach County Jail for a term of 90 days w/credit from 9/21/83 to 10/27/83." The sentencing orders required that Glover "surrender to Palm Beach County Jail on 1/9/84 by 12:00 noon" to begin serving this ninety-day sentence. When Glover surrendered to the county jail as required, he had already served thirty-six days of his ninety-day sentence – the period from September 21 to October 27, 1983 for which the court had given him credit. Thus, Glover was scheduled to complete his sentence on March 3, 1984.

On March 1, 1984, however, while Glover was still incarcerated, a new affidavit of probation violation was filed, and Glover remained in jail while awaiting the hearing on the additional violations charged. Glover was adjudicated guilty of those violations on March 29, 1984 and was sentenced to confinement "in the Palm Beach County Jail for 364 days w/credit for 121 days." Because Glover was only incarcerated from September 21 to October 27, 1983 and from January 9 to March 29, 1984, the date of the second violation hearing, the 121 days' credit necessarily reflects Glover's incarceration during these periods. We note that by our calculation, Glover had only served a total of 116 days; however, this discrepancy does not affect our conclusion as to the source of the 121-day credit.

By adding the ninety days imposed for the first violation and the 274 days for the subsequent violations, Glover's total sentence of imprisonment was 364 days.  To add an additional ninety days to the 364-day figure, as the government wishes, would count his first ninety-day sentence twice.  Because this sentence falls short of § 4A1.2(d)'s one year and one month threshold, we find that the district court erred in treating Glover's burglary conviction as a "prior felony conviction of . . . a crime of violence" in assigning Glover a base offense level pursuant to § 2K2.1(a).  Accordingly, we VACATE Glover's sentence and REMAND for the case for resentencing consistent with this opinion.

EDMONDSON, Circuit Judge, dissenting:

While I agree with the bulk of today's Court opinion, I cannot agree with the result. When a state sentencing court gives credit for time served--even for time served pursuant to an earlier probation violation--that credit, in my view, has no impact on the "sentence pronounced." And it is the sentence pronounced--discerned from the face of the trial court judgment--that is controlling here. See U.S.S.G. § 4A1.2, comment (n. 2) ("That is, criminal history points are based on the sentence pronounced, not the length of time actually served"). Adding the two sentences pronounced, Glover's term of imprisonment exceeds one year and one month under § 4A1.2(d): 90 days + 364 days = 454 days.

I would affirm.