RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

Nos. 04-1741; 05-1188

PATRICK GALVAN (04-1741); CHARLES JOHNSON
(05-1188),

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 03-20017—David M. Lawson, District Judge.

Argued: June 1, 2006

Decided and Filed: July 13, 2006

Before: BATCHELDER, GIBBONS, and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Russell J. Perry, Jr., Saginaw, Michigan, Elias J. Escobedo, Jr., Waterford, Michigan, for Appellants. James C. Mitchell, ASSISTANT UNITED STATES ATTORNEY, Flint, Michigan, for Appellee. **ON BRIEF:** Russell J. Perry, Jr., Saginaw, Michigan, Elias J. Escobedo, Jr., Waterford, Michigan, for Appellants. James C. Mitchell, ASSISTANT UNITED STATES ATTORNEY, Flint, Michigan, for Appellee.

_____

## OPINION

_____

COOK, Circuit Judge. Patrick Galvan[1] and Charles Johnson pleaded guilty to conspiring to distribute cocaine. Both individuals attack the sentences that the district court imposed. Galvan argues that the district court miscalculated his criminal history and that the court determined his sentence under mandatory Sentencing Guidelines, and Johnson argues that the district court improperly enhanced his sentence. We vacate Galvan's sentence and remand for resentencing in accordance with *Booker*, and we affirm Johnson's sentence.

---

[1] Galvan's name appears as "Galvin" in certain documents in the record. We use "Galvan" for consistency with our docket.

1

I.  Galvan

At sentencing the district court found that Galvan fell into criminal history category III under the Sentencing Guidelines based on a total of six criminal history points.  Galvan argues that his criminal history category should have been II because the district court erroneously added three criminal history points.  He also raises a *Booker* challenge.  We review "a district court's legal conclusions regarding the Sentencing Guidelines *de novo*" and "a district court's factual findings in applying the Sentencing Guidelines for clear error."  *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006).  We apply de novo review to the district court's interpretation of the Guidelines. *United States v. DeCarlo*, 434 F.3d 447, 452 (6th Cir. 2006).

A.  Criminal History Calculation

The Guidelines instruct a sentencing judge, in calculating a defendant's criminal history, to award three points for "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense." U.S.S.G. § 4A1.2(e)(1); *see id.* § 4A1.1(a).  Just over ten years before Galvan began conspiring to distribute cocaine, a Michigan state court sentenced him to four years' probation for felonious assault.  Galvan twice violated his probation, receiving a 65-day sentence for the first violation and a 365-day sentence for the second.

To calculate criminal history points "[i]n the case of a prior revocation of probation," a court must "add the original term of imprisonment to any term of imprisonment imposed upon revocation."  U.S.S.G. § 4A1.2(k)(1).  The district court added Galvan's two sentences for probation violations (65 days and 365 days) to his original sentence (no imprisonment) and, because the total sentence—430 days—exceeded thirteen months, added three points to Galvan's criminal history score.  In challenging the district court's calculation, Galvan points out that the Guidelines speak only of "revocation" of probation, and the state court described his probation as "revoked" only upon the second violation.  Under Galvan's theory, the 65-day sentence imposed for his first probation violation should not be counted toward his total sentence, dropping the total sentence below the thirteen-month minimum for criminal history points and reducing his criminal history category to II.

But we are concerned only with "revocation" as it is used in the Guidelines, and the state court's terminology does not control our interpretation of the federal Sentencing Guidelines.  *See United States v. Williams*, 176 F.3d 301, 311 (6th Cir. 1999); *United States v. Townsend*, 408 F.3d 1020, 1025-26 (8th Cir. 2005) (rejecting similar argument because "[t]hat the incarcerations following Townsend's probation violations were not each labeled a 'revocation of probation' is not controlling").  "[W]hen a defendant has been . . . placed on probation, and the court has thereafter, upon finding he violated probation, ordered him to serve a period of incarceration, we think it proper to view that order as at least a partial revocation of probation that falls within the scope of Guidelines § 4A1.2(k)(1)."  *United States v. Glidden*, 77 F.3d 38, 40 (2d Cir. 1996); *see United States v. Glover*, 154 F.3d 1291, 1294 (11th Cir. 1998) (rejecting similar argument); *United States v. Reed*, 94 F.3d 341, 344 (7th Cir. 1996) ("It is true . . . that the PSI does not indicate that Reed's probation actually was revoked . . . . Yet we believe that the circumstances here must be considered as a 'revocation of probation' under section 4A1.2(k)(1)."); *but see United States v. Ramirez*, 347 F.3d 792, 799-806 (9th Cir. 2003) (finding no revocation).

We hold that the state court revoked Galvan's probation within the meaning of § 4A1.2(k)(1) when it sentenced him to 65 days' imprisonment.  We find it telling that the state court ordered one of the conditions of Galvan's probation—electronic monitoring—to be "reinstated" after his prison term.  That a condition of probation had to be "reinstated" after Galvan's release implies that "his probation was at least partially revoked for purposes of section 4A1.2(k)(1)."  *Reed*, 94 F.3d at 346.

Additionally, like the Eleventh Circuit, we conclude that "§ 4A1.2(k)(1) contemplates that, in calculating a defendant's total sentence of imprisonment for a particular offense, the district court will aggregate any term of imprisonment imposed because of a probation violation with the defendant's original sentence of imprisonment, if any." *Glover*, 154 F.3d at 1294. The Supreme Court, discussing pre-Guidelines practice for federal sentencing, held that "'revocation' of parole followed by further imprisonment was not a mere termination of a limited liberty that a defendant could experience only once per conviction." *Johnson v. United States*, 529 U.S. 694, 712 (2000); *see also id.* at 707 (holding that "revoke" as used in a former version of 18 U.S.C. § 3583 "allow[ed] a 'revoked' term of supervised release to retain vitality after revocation"). Finally, to the extent that probation is "an *alternative* to imprisonment," *id.* at 712 n.11 (emphasis added), imposition of imprisonment necessarily revokes probation. *Cf. United States v. St. Clair*, 127 F. App'x 777, 778 (6th Cir. 2005) (equating without discussion a sentence for "probation violation" with probation revocation); *United States v. Wright*, 19 F. App'x 230, 234 (6th Cir. 2001) (same). Because the state court's imposition of a sentence for Galvan's probation violation was "at least a partial revocation of probation that falls within the scope of Guidelines § 4A1.2(k)(1)," *Glidden*, 77 F.3d at 40, the district court correctly calculated Galvan's criminal history score.

Galvan also contends that the district court should have reduced his aggregate sentence for the state court conviction—430 days—by the number of days that the state court credited him for time served. The state court credited Galvan with 35 days for his 65-day sentence and 22 days for his 365-day sentence. Eliminating the credited days from his aggregate sentence reduces the sentence below the one-year-and-one-month threshold.

Galvan points to a Michigan law requiring a sentencing court to credit a defendant's sentence for any time served prior to sentencing. *See* Mich. Comp. Laws § 769.11b. But, for the purposes of Guidelines criminal history calculation, it matters not whether a defendant's sentence included credit for time served presentence. *United States v. Cruz-Alcala*, 338 F.3d 1194, 1199-1200 (10th Cir. 2003); *United States v. Staples*, 202 F.3d 992, 997 (7th Cir. 2000) ("The Guidelines make no distinction as to how or when the defendant must serve the sentence, such as . . . getting credit for time spent awaiting trial." (quotation omitted)). Thus Galvan's argument fails.

Galvan also argues that the Michigan court credited his 65-day sentence for the first probation violation toward his later 365-day sentence. Stated differently, Galvan suggests that the state court intended to sentence him to only 300 days for the second violation, making the total for *both* sentences only 365 days (and below the requisite thirteen months). But nothing on the face of the record indicates any such credit, and the district court was not required to search beyond the record. *See United States v. French*, 974 F.2d 687, 701 (6th Cir. 1992) ("The state court conviction . . . was not unconstitutional on the face of the record utilized to enhance the sentence."); *United States v. Mateo*, 271 F.3d 11, 16 (1st Cir. 2001) ("[T]he sentencing guidelines do not compel district courts to inquire beyond the face of the state-court record . . . .").

Galvan protests that, if the Michigan court failed to credit his 65-day sentence toward his 365-day sentence, it violated the Michigan Supreme Court's decision in *People v. Sturdivant*, 312 N.W.2d 622 (Mich. 1981). Even if Galvan's interpretation of *Sturdivant* is correct, however, the district court at sentencing need not collaterally review Galvan's prior sentences. *See* U.S.S.G. § 4A1.2 cmt. n.6 ("With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law . . . ."); *French*, 974 F.2d at 701 (rejecting appellant's contention that "district courts are required to entertain at sentencing a defendant's argument and his evidence to the effect that his state court conviction was unconstitutional, even though that defendant has not 'shown [the conviction] to have been previously ruled constitutionally invalid.'" (alteration in original) (quoting U.S.S.G. § 4A1.2 cmt. n.3 (1990))); *Mateo*, 271 F.3d at 16 (rejecting appellant's argument that district court should not

have considered allegedly invalid state-issued warrant in Guidelines criminal history calculation because "the sentencing guidelines do not compel district courts to inquire beyond the face of the state-court record, let alone to make after-the-fact evaluations of the correctness *vel non* of the decisions of state-court officials"). We conclude that the district court properly calculated Galvan's criminal history score based upon the record.

### B.  Mandatory Guidelines Sentence

Galvan complains that the district court considered the Sentencing Guidelines mandatory when it sentenced him.  At oral argument, the government conceded the need to remand for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005), and we agree that remand is appropriate. Accordingly, we vacate Galvan's sentence and remand for resentencing under the now-advisory Guidelines regime.

### II.  Johnson

Johnson argues that the district court erred in enhancing his sentence for constructively possessing a dangerous weapon during the offense and for holding a supervisory role in the conspiracy.  Johnson's arguments miss the mark.

### A.  Possession of a Firearm

The Guidelines instruct a court to add two points to a defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The enhancement applies whether a defendant actually or constructively possessed the weapon. *See United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002).  A defendant constructively possesses a gun if he has "'ownership, or dominion or control over the [firearm] itself, or dominion over the premises where the [firearm] is located.'"  *Id.* (alterations in original) (quoting *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991)).  The district court, crediting the testimony of Johnson's co-conspirator, found that Johnson constructively possessed a handgun during the drug offense.

Johnson's co-conspirator, Marcus Harrell, testified that Johnson told him to "bring a gun" to a scheduled drug deal.  Harrell, in turn, told another co-conspirator, Gary Brown, to bring the weapon, and Brown complied.  Johnson argues on appeal that, even if he instructed Harrell to bring the gun, he never knew that Harrell (or Brown) *actually* brought the gun to the transaction, and he therefore could not have constructively possessed it.

The district court did not err in finding that Johnson constructively possessed the gun.  "If the offense committed is part of a conspiracy, . . . the government does not have to prove that the defendant actually possessed the weapon, but instead may establish that a member of the conspiracy possessed the firearm and that the member's possession was reasonably foreseeable by other members in the conspiracy."  *United States v. Owusu*, 199 F.3d 329, 347 (6th Cir. 2000).  The sentencing court properly imputed constructive possession of the firearm to Johnson because, in light of his instructions to Harrell, Johnson reasonably could have foreseen that his co-conspirator would possess a weapon.  *United States v. Dunlap*, 209 F.3d 472, 479 (6th Cir. 2000).

### B.  Supervisory Role

Johnson also challenges the enhancement of his sentence for his supervisory role in the conspiracy.  *See* U.S.S.G. § 3B1.1(b).  The thrust of Johnson's argument is that the government offered no evidence that he exercised a degree of authority or control over others within the conspiracy.  But, as we have already discussed, the court specifically found that Harrell procured a gun for a drug deal at Johnson's direction.  In describing Johnson's managerial role, the court discussed Johnson's instructing Harrell to bring the gun, as well as two kilograms of cocaine, to the

drug deal.  Given Harrell's testimony to this effect, which the district court specifically credited, we discern no error in the district court's conclusion that Johnson managed or supervised at least one other person in a conspiracy involving five or more participants.  *See* U.S.S.G. 3B1.1(b).

### C.  Pro Se Arguments

Acting pro se, Johnson advances a number of additional arguments for remand.  In his plea agreement, Johnson waived "any right to file a direct appeal from the conviction or sentence," except where he lodged "a timely objection" in the district court.  The district court explained the waiver to Johnson at the plea hearing, and Johnson indicated that he understood its ramifications.  Because Johnson failed to lodge objections below for any of the arguments he raises pro se, we conclude that Johnson waived these challenges.  *See United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005) ("[A] defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." (quotation omitted)).

### III.  Conclusion

We vacate Galvan's sentence and remand for resentencing in light of *Booker.*  We affirm Johnson's sentence.