**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0814n.06

**No. 12-1447**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Sep 06, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| MARCUS SHAROD RAND, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |

Before:  GIBBONS and STRANCH, Circuit Judges, and HOOD, District Judge.[*]

**JANE B. STRANCH**, Circuit Judge.  Defendant Marcus Rand pled guilty to knowingly and intentionally possessing a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Rand's presentence investigation report recommended that he be designated a career offender by counting a 1998 conviction for assault with a dangerous weapon.  Rand objected to aggregating his original sentence with his jail terms for probation violations to bring the 1998 conviction into the relevant time frame for criminal history purposes.  The district court overruled Rand's objection and imposed a 151-month prison sentence followed by four years of supervised release.  The district court also imposed a special condition of supervised release prohibiting him

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

-1-

from possessing or being the primary user of a cellular phone or electronic device without the prior

permission of his probation officer. Rand appeals, arguing that he was improperly classified as a

career offender and that the district court abused its discretion in imposing the cell phone restriction.

For the following reasons, the district court is **AFFIRMED**.

## I. BACKGROUND

On September 9, 2011, officers with the Kalamazoo Department of Public Safety responded

to a shooting at an apartment building. Defendant Marcus Rand was the shooting victim and was

inside an apartment belonging to Shantel Pride. Pride gave officers permission to search the

apartment, where crack-cocaine, marijuana, cash, and digital scales were found. Rand was

subsequently charged in a three-count indictment with knowingly and intentionally possessing with

intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(D) (Count 1); knowingly and intentionally possessing with intent to distribute 28 grams of

cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count 2); and knowingly and

intentionally possessing with intent to distribute a mixture or substance containing cocaine in

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 3).

In a subsequently filed felony information, the U.S. Attorney charged Rand with knowingly

and intentionally possessing a mixture or substance containing cocaine base in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(C). Rand agreed to plead guilty to this charge. The plea agreement provided

that Rand knowingly waived his right to appeal "any sentence that is at or below the maximum

guideline range" and "the manner in which the sentence was determined on the grounds set forth in

Title 18, United States Code, Section 3742."[1]  Rand retained the right to appeal objections preserved at sentencing regarding the court's guideline range determination, as well as a sentence that exceeded the statutory maximum or that was based on an unconstitutional factor.  Rand pled guilty before a magistrate judge, who recommended to the district court that the plea be accepted.  The district court subsequently accepted the magistrate judge's report and recommendation.

Prior to the sentencing hearing, a presentence investigation report (PSR) was prepared; it recommended that Rand be designated a career offender with a guideline range of 151 to 188 months.  In determining his career offender status, the PSR assigned three criminal history points to a 1998 conviction for assault with a dangerous weapon for which Rand was originally sentenced to 120 days in prison, with 24 months probation.  Rand violated the terms of his probation in June 1999 and spent 10 months in jail.  A second violation in December 1999 resulted in an additional 60 days in jail.

---

[1]The relevant portion of 18 U.S.C. § 3742 provides that "[a] defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence":

> (1) was imposed in violation of law;
> (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
> (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
> (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

*Id.* § 3472(a).

Rand objected to his classification as a career offender, arguing that his probation was amended, rather than revoked, and that prison terms following probation violations could only be aggregated if the probation was specifically revoked. The district court overruled Rand's objection, finding *United States v. Galvan*, 453 F.3d 738 (6th Cir. 2006) to be controlling. The court found that the 1998 conviction and the subsequent terms of imprisonment imposed for the probation violations allowed for a 15-year look-back period, rendering the conviction applicable for determining career offender status. As a result, Rand received a 151-month prison sentence followed by four years of supervised release. In addition to several standard and special conditions, Rand was prohibited from possessing or being the primary user of a cellular phone or electronic device without the prior permission of his probation officer. Although Rand's counsel objected to this restriction, the district court reasoned that it was necessary because "cellular telephones and other electronic devices are major tools in the drug trade," and Rand had a "substantial history of drug trafficking." This appeal followed.

## II. ANALYSIS

### A.       Standard of Review

This court reviews de novo a district court's conclusion that a defendant is a career offender. *United States v. Robinson*, 333 F. App'x 33, 34 (6th Cir. 2009). The court reviews any findings of fact for clear error and "give[s] due deference to the district court's application of the [g]uidelines to the facts." *United States v. Galaviz*, 645 F.3d 347, 358 (6th Cir. 2011) (internal quotation marks omitted).

De novo review is also applied to determine whether a defendant has waived the right to appeal his sentence pursuant to a plea agreement. *United States v. Ferguson*, 669 F.3d 756, 764 (6th Cir. 2012). As long as the defendant has knowingly and voluntarily entered into a plea agreement that restricts his right of appeal, "this court is bound by the agreement, and will review a sentence only in limited circumstances, such as where the sentence imposed is based on racial discrimination or is in excess of the statutory maximum." *Id.*

**B.      Career Offender Status**

Under the sentencing guidelines, a defendant is considered a career offender if he or she (1) was at least 18 at the time of the federal offense; (2) the federal offense is either a felony crime of violence or felony controlled substance offense; and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. USSG § 4B1.1(a). Only the third requirement is at issue here. There is no question that Rand had one qualifying conviction. And Rand does not dispute that the *type* of offense at issue in the second conviction    assault with a dangerous weapon    qualifies as a crime of violence. To qualify, however, the offense must also be "punishable by imprisonment for a term exceeding one year." USSG § 4B1.2(a). The question Rand raises is whether it was appropriate for the district court to aggregate his original sentence (120 days, or 4 months) with the terms of imprisonment he served on the two probation violations in order to satisfy this threshold. Answering this question requires us to examine the interplay between several guidelines provisions and this circuit's relevant caselaw.

Section 4A1.2 of the sentencing guidelines, which contains definitions and instructions for computing criminal history under § 4A1.1, is "applicable to the counting of convictions" for career

offender purposes under § 4B1.1. USSG § 4B1.2 comment. (n.3). In order to be "countable" for criminal history purposes, a prior offense must meet certain requirements, including occurrence within a particular time frame. Rand's PSR added three points by counting his 1998 conviction. To count, the conviction must meet these requirements: the sentence of imprisonment must exceed one year and one month, USSG § 4A1.1(a), and the sentence had to be imposed within fifteen years of his "commencement of the [federal] offense" or, if not, his incarceration must extend into this 15-year period. *Id.* comment. (n.1); *see also* USSG § 4A1.2(e)(1). Extension into the 15-year period can include time served following a violation of probation. Section 4A1.2(k)(1) instructs that "[i]n the case of a prior revocation of probation . . . , add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points . . . ." The question here is whether the prison terms Rand served after violating his probation were "imposed upon revocation" of that probation.

This court has had two opportunities to construe the term "revocation" as it is used in this context. The first is *Galvan*, where the defendant was sentenced in state court to four years' probation for a particular offense. 453 F.3d at 740. He violated his probation on two separate occasions and received terms of imprisonment for each (65 days and 365 days, respectively); however, his probation was only revoked after the second violation. *Id.* The district court added these two sentences together in calculating Galvan's criminal history; because the total sentence of 430 days exceeded 13 months, three points were added to his criminal history score. *Id.* Galvan argued that because the first violation did not involve an actual revocation of probation, it should not have been considered. *Id.* This court disagreed, holding that "[b]ecause the state court's imposition

of a sentence for Galvan's probation violation was 'at least a partial revocation of probation that falls within the scope of Guidelines § 4A1.2(k)(1),' the district court correctly calculated [his] criminal history score." *Galvan*, 453 F.3d at 741 (citation omitted) (quoting *United States v. Glidden*, 77 F.3d 38, 40 (2d Cir. 1996)). The court observed "to the extent that probation is an *alternative* to imprisonment, imposition of imprisonment necessarily revokes probation." *Id.* at 741 (internal quotation marks and citation omitted).

The second case is *Galaviz*, where the defendant alleged that the district court miscalculated his criminal history category. 645 F.3d at 357. His 2006 federal offense was almost six and a half weeks beyond the 15-year cutoff as calculated from the date of parole, which occurred in November 1991. 645 F.3d at 358. The defendant was picked up for a parole violation in December 1991 and was detained until February 1992, which brought the offense within the applicable time frame; however, no actual parole violation was ever found. *Id.* at 359. This court held that the district court should not have used this period of incarceration to render the conviction relevant for criminal history purposes, concluding that "[t]he parolee must have been incarcerated due to a revocation of parole, rather than merely have been incarcerated pending determination whether a parole violation occurred in the first place" in order for a sentence falling outside the relevant time period to be a countable offense. *Id.* at 361.

Rand argues that *Galaviz* highlights the importance of *actual* revocation, and alleges there was no revocation in his case. The government argues that *Galvan* applies and Rand's reliance on *Galaviz* is misplaced because it dealt with whether incarceration prior to a parole-violation hearing could be counted as an incident of incarceration. We agree with the government's position. *Galaviz*

is distinguishable from the present situation, which includes two separate findings of parole

violations and subsequently imposed periods of incarceration.[2] As the court stated in *Galvan*, "to

the extent that probation is an *alternative* to imprisonment, imposition of imprisonment necessarily

revokes probation." 453 F.3d at 741 (internal quotation marks and citation omitted); *cf. Glidden*, 77

F.3d at 40 ("[W]hen a defendant has been given a suspended sentence of imprisonment . . . and the

court has . . . ordered him to serve a period of incarceration [after finding a probation violation], we

think it proper to view that order as at least a partial revocation of probation . . . . If, adding the

original sentence of imprisonment to all periods of imprisonment imposed upon revocation, *whether*

*partial or total*, the court finds that the total prison time served was at least 60 days but not more

than 13 months, the court should assign the defendant two criminal history points for that prior

offense . . . ." (emphasis added)).

Because *Galvan* has already resolved the issue presented in the Government's favor and is

controlling on the relevant point, the district court is affirmed.

## C.    Condition of Supervised Release

Rand argues that the district court abused its discretion by imposing a condition of supervised

release restricting his use of cellular telephones and electronic devices because there is no evidence

---

[2]Although Rand urges the court to adopt the approach taken by the Ninth Circuit in *United States v. Ramirez*, 347 F.3d 792, 805 (9th Cir. 2003)    which held that "revocation" under § 4A1.2(k) means actual revocation, rather than a period of imprisonment following a finding that parole or probation was violated    we are constrained by *Galvan*'s rejection of it. *See Galvan*, 453 F.3d at 740 (citing decisions from the Second, Eleventh, and Seventh Circuits in support of its holding that a period of incarceration following a finding that the defendant's probation had been violated was "at least a partial revocation of probation," followed by a "*but see*" citation to *Ramirez*).

that he used such items to facilitate drug trafficking. The government contends that Rand waived his right to challenge conditions of supervised release by entering into a plea agreement that only conferred the right to appeal an incorrectly determined guideline range; a sentence exceeding the statutory maximum; or a sentence based on an unconstitutional factor. Rand responds that the plea agreement is silent as to whether he can appeal supervised release conditions and, thus, should be strictly construed against the government.

This court recently decided whether a plea agreement similar to Rand's foreclosed a challenge to the conditions of supervised release. In *Ferguson*, 669 F.3d at 760, the defendant's plea agreement reserved only the right to appeal "any punishment in excess of the statutory maximum or any sentence to the extent it exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines," as well as ineffective assistance or prosecutorial misconduct claims. The defendant challenged five of the special conditions of supervised release imposed by the district court. *Id.* at 765. The court determined that the plea, which the defendant knowingly and voluntarily entered, foreclosed such a challenge. First, the panel noted that very similar plea agreements had previously been found to "prevent[] a defendant from appealing his . . . conditions of supervised release." *Id.* at 765. Second, the court found that the plain language of the agreement prevented the challenge, concluding "that the general reservation of the right to appeal 'any punishment in excess of the statutory maximum' or 'any sentence to the extent that it exceeds the maximum sentencing range' does not preserve the right to challenge the conditions of supervised release imposed." *Id.* at 766 (quoting *United States v. Meeks*, 290 F. App'x 896, 904-05 (6th Cir. 2008)). Although acknowledging that in one case *United States v. Lee*, 502 F.3d 447, 449 (6th Cir.

2007)   this court reviewed a challenge to special conditions of supervised release notwithstanding an appellate waiver, this was because the "case possibly implicate[d] ineffective assistance by his counsel." In *Ferguson*, however, the defendant simply challenged the special conditions as an abuse of the district court's discretion. The panel concluded that such an argument did "not fall within the limited bounds of [the] decision in *Lee* to reach the challenge to special conditions despite an appellate waiver provision that arguably foreclosed the appeal." *Ferguson*, 669 F.3d at 767.

*Ferguson*'s principles are applicable here. There is nothing to indicate that Rand's guilty plea was not knowingly and voluntarily entered. Rand waived the right to appeal "any sentence that is at or below the maximum guideline range as determined by the Court before any upward departure or variance, and the manner in which the sentence was determined." The only appellate rights retained were objections made at the time of sentencing regarding the court's guideline range determination and the right to appeal a sentence exceeding the statutory maximum or based on an unconstitutional factor. Although Rand argues that the government could have specifically included challenges to the conditions of supervised release in the plea agreement, there is nothing precluding the government from reaching the same result by broadly prohibiting appeal, subject to narrow exceptions.

Finally, there is no allegation that Rand's counsel was ineffective in this area, only that the district court abused its discretion in imposing this particular condition of supervised release. As noted above, we are constrained by the determination in *Ferguson* that such an argument is foreclosed by an appellate waiver provision similar to Rand's. For these reasons, we conclude that

Rand's challenge to the condition of his supervised release was waived pursuant to his plea agreement.

## III. CONCLUSION

For the foregoing reasons, the district court is **AFFIRMED**.