NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0091n.06

No. 22-3160

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Feb 15, 2023 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| IVEN BOOKER, | ) | THE NORTHERN DISTRICT OF |
|  | ) | OHIO |
| Defendant-Appellant. | ) | OPINION |
|  | ) |  |

Before: SUHRHEINRICH, COLE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.   Iven Booker brandished a loaded pistol while drunk at a bar and became combative with the responding police. He pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court imposed a 71-month prison term that exceeded Booker's guidelines range by 14 months. The court reasoned that Booker's dangerous conduct in this case fit a "pattern" in which he would drink to excess and threaten or hit others, including the mothers of his two children. The court also imposed special conditions on Booker's ensuing term of supervised release that restricted his contact with these two women and that permitted him to visit his children only with a court's approval. Booker now appeals the upward variance and the special conditions. But the upward variance was substantively reasonable. And Booker waived his right to appeal the special conditions. We thus affirm.

I

Booker has a long list of offenses, many of which involved domestic violence or excessive drinking in Ashtabula, Ohio.  In 2011, after Booker's then-girlfriend tried to get her phone back from him during an argument, he grabbed her wrist and shoved her against a wall.  He was convicted of a domestic-violence misdemeanor.  Two months later, he threatened to "punch" his then-girlfriend "in the face" during an argument over the phone.  PSR, R.24, PageID 120.  This threat led to a misdemeanor conviction for making threatening phone calls.  The next year, his then-girlfriend found an intoxicated Booker in her apartment holding their child.  He broke the glass on her screen door, tried to spit on her, and threatened to hit her.  Booker was convicted of another domestic-violence misdemeanor.

In 2015, Booker had two encounters with a different girlfriend (and the mother of his second child).  In the first, Booker refused to leave this woman's apartment after an argument.  This incident resulted in a misdemeanor conviction for criminal trespassing.  Two months later, he committed a more serious crime.  According to his girlfriend, he entered her apartment by breaking a window, punched her and her mother in their faces, and spat on them both.  Booker again appeared intoxicated.  He was convicted of a domestic-violence felony.

Given this felony offense, Booker could not possess firearms.  On September 25, 2020, however, the owner of an Ashtabula bar spotted him with a gun.  After the owner called the police, officers observed Booker pointing a pistol at the ground while outside.  Although Booker initially cooperated, his demeanor soon changed.  Officers had to force a combative Booker into a police cruiser.  They also could not book him at the police station due to his lack of cooperation.  Booker admitted that he was intoxicated.  The police later discovered that Booker's pistol had been stolen the previous year.

A grand jury indicted Booker for illegally possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He agreed to plead guilty. In his plea agreement, Booker generally waived his appellate rights but preserved the right to appeal, among other things, an above-guidelines sentence. In exchange, the government agreed to recommend a within-guidelines sentence.

At sentencing, the district court calculated Booker's guidelines range as 46 to 57 months' imprisonment. But it decided to vary upward from this range. It imposed a 71-month sentence because of the circumstances of Booker's offense and his criminal history. It next imposed a three-year term of supervised release. As a condition of supervised release, the court explained to Booker that he could not contact the victims of his domestic violence (the mothers of his two children). This condition caused Booker to interject that it would bar him from seeing his children. The court responded that Booker could see his children if the juvenile court granted him visitation in a supervised setting. But Booker continued to argue. The court decided to reschedule Booker's sentencing so that it could consider whether to impose a higher prison term in light of his conduct at the hearing.

At a second hearing, the court chose the same sentence. It imposed a 71-month term of imprisonment. It also imposed the same supervised-release conditions. When on supervised release, Booker can have no contact with the mothers of his children unless his probation officer approves. Judgment, R.31, PageID 300. Booker also can have "[s]upervised visitation" with his children only if he obtains "prior approval" from the appropriate juvenile court. *Id.*

II

On appeal, Booker challenges both his above-guidelines prison term and the supervised-release conditions limiting his access to his former girlfriends and children.

*Term of Imprisonment.*  Booker first argues that the district court's 71-month sentence is "too long" because it exceeded the upper end of his guidelines range (46 to 57 months) by 14 months.  *See United States v. Thomas*, 933 F.3d 605, 612 (6th Cir. 2019) (citation omitted).  He faces a high bar to succeed on this substantive-reasonableness challenge because we give significant "deference" to the district court's conclusion that the sentencing factors in 18 U.S.C. § 3553(a) warranted the variance.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Thus, although an above-guidelines sentence does not receive the presumption of reasonableness that applies to a within-guidelines sentence, we still review it under a forgiving abuse-of-discretion standard.  *See Thomas*, 933 F.3d at 613.  We will uphold a variance as long as a court adequately explains why a defendant's unique circumstances make the case unlike the "mine-run," "typical," or "heartland" case for which the Sentencing Commission has designed the relevant guidelines.  *United States v. Burkey*, 2023 WL 652812, at *5 (6th Cir. Jan. 27, 2023) (citation omitted); *see United States v. Lee*, 974 F.3d 670, 676–77 (6th Cir. 2020).

Here, the district court offered two valid reasons why Booker's case did not fit the typical factual mold for which his guidelines range was best suited.  For one thing, the district court relied on the nature of Booker's current felon-in-possession offense.  Booker did not simply possess a firearm in his home.  He took a "fully loaded" pistol to a bar, drank alcohol until he was "clearly intoxicated," started brandishing the gun, and "placed customers in the bar at danger."  Sent. Tr., R.37, PageID 371.  Booker then became combative with the officers who arrested him.  *Id.*  The district court could reasonably find that these "specific facts" made Booker's crime an atypical felon-in-possession offense.  *United States v. McClain*, 858 F. App'x 905, 907 (6th Cir. 2021).

For another thing, the district court explained that Booker's present offense followed an "alcohol and anger" pattern of criminal activity in which Booker would commit or threaten

4

violence and resist responding officers. Sent. Tr., R.37, PageID 372–75. Most seriously, Booker had several domestic-violence convictions in which he angrily threatened or hit the mothers of his children, sometimes while intoxicated. PSR, R.24, PageID 120–24. Although Booker did not have a prior firearms conviction, the court reasonably recognized that his conduct in this case (drinking to excess and creating a danger to others) bore a "relationship" to his past crimes. *Lee*, 974 F.3d at 677. And despite Booker's many previous sentences and correctional programs, the court reasonably found that Booker's past punishments had not sent "the appropriate message" to him that our society will not tolerate his dangerous conduct. Sent. Tr., R.37, PageID 375. The court thus could rationally conclude that Booker's criminal history showed a "specific need for deterrence beyond that already captured by the guidelines[.]" *Lee*, 974 F.3d at 677.

When we account for the substantial (but not eyebrow-raising) size of the variance, these two reasons sufficed. *See Burkey*, 2023 WL 652812, at *5. A small sampling of our precedent shows that the 14-month variance falls well within the range of upward variances that we have upheld. *See id.* at *3, *7 (22-month variance up to a 63-month sentence); *United States v. Zabel*, 35 F.4th 493, 507–08 (6th Cir. 2022) (6-month variance up to an 18-month sentence); *United States v. Reese*, 2022 WL 612807, at *12 (6th Cir. Mar. 2, 2022) (8-month variance up to an 18-month sentence); *United States v. Day*, 2022 WL 523564, at *2 (6th Cir. Feb. 22, 2022) (10-month variance up to a 24-month sentence); *United States v. Gray*, 2021 WL 4963366, at *7 (6th Cir. Oct. 26, 2021) (25-month variance up to a 96-month sentence); *United States v. Wilson*, 2021 WL 3017276, at *1–4 (6th Cir. July 16, 2021) (10-month variance up to a 51-month sentence); *McClain*, 858 F. App'x at 906 (8-month variance up to a 65-month sentence); *United States v. Cechini*, 834 F. App'x 201, 205–06 (6th Cir. 2020) (21-month variance up to a 54-month sentence); *United States v. Dunnican*, 961 F.3d 859, 880–81 (6th Cir. 2020) (21-month variance

up to an 84-month sentence); *United States v. Williams*, 807 F. App'x 505, 509 (6th Cir. 2020) (20-month variance up to a 36-month sentence); *United States v. Williams*, 664 F. App'x 517, 519–20 (6th Cir. 2016) (27-month variance up to a 60-month sentence).

In response, Booker cites our decision in *Lee* to argue that the district court failed to explain why the guidelines did not already account for his criminal history. But the 23-month variance that we reversed in *Lee* substantially exceeded the 14-month variance in Booker's case. *See* 974 F.3d at 677. The district court in *Lee* also imposed a much larger increase from the upper end of the defendant's guidelines range (62%) than the district court in this case imposed (25%). *See id.* Perhaps most significantly, the defendant's prior criminal history in *Lee* had no "relationship" to his current offense. *Id.* at 677–78. In this case, by contrast, the court found that Booker's current offense fit a consistent "pattern" of alcohol-fueled violence and encounters with the police. Sent. Tr., R.37, PageID 373; *cf. Cechini*, 834 F. App'x at 205–07.

In fact, Booker himself concedes that his crimes have a "common thread of alcohol addiction," but he asserts that the district court should have treated his alcohol problem as a mitigating factor rather than an aggravating one. Appellant's Br. 13–14. Yet the court could reasonably conclude that his use of "intoxicating substances" during his crimes increased the danger that he posed to the community and to his domestic-violence victims. *See United States v. Goode*, 834 F. App'x 218, 221 (6th Cir. 2020); *Cechini*, 834 F. App'x at 206–07; *see also United States v. Miller*, 646 F.3d 1128, 1133–34 (8th Cir. 2011).

*Supervised-Release Conditions*. Booker next disputes two conditions of his supervised release. One condition required him to have no contact with the mothers of his children without his probation officer's approval. The other permitted him to visit his children only with the

approval of a juvenile court. Booker contends that these conditions implicate his right to parental association with his children and have no rational connection to his felon-in-possession offense.

A district court may impose any supervised-release "condition" that "it considers to be appropriate[.]" 18 U.S.C. § 3583(d)(3). But the court must ensure that any condition "is reasonably related" to the § 3553(a) factors, "involves no greater deprivation of liberty" than necessary, and adheres to the Sentencing Commission's "policy statements[.]" *Id.* § 3583(d)(1)–(3). Because the statute gives district courts discretion to impose these conditions, we review them for an abuse of discretion. *See United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007). And while we review conditions that limit constitutional rights more closely, we have upheld those conditions when a court provided an adequate justification for them, such as the need to rehabilitate the defendant or protect the public. *See United States v. Faber*, 718 F. App'x 349, 351–52 (6th Cir. 2017); *United States v. Widmer*, 785 F.3d 200, 207–10 (6th Cir. 2015); *cf. United States v. Stelmacher*, 891 F.3d 730, 733–35 (8th Cir. 2018).

Here, however, we need not reach the merits of Booker's challenge to the special conditions. He waived his right to appeal this part of his sentence in his plea agreement. Defendants may waive any constitutional right, including an appellate right, in a valid plea agreement. *See United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). And we review de novo whether the language of a plea agreement's appeal waiver covers a particular appellate argument. *See United States v. Ferguson*, 669 F.3d 756, 764 (6th Cir. 2012).

In the plea agreement, Booker "expressly and voluntarily waive[d]" his right "to appeal the conviction or sentence in this case[.]" Plea Agreement, R.17, PageID 46–47. But the agreement carved out three categories of claims he could still pursue. *Id.*, PageID 47. He could appeal "any

punishment in excess of the statutory maximum," "any sentence" that exceeds his guidelines range, and any claim of "ineffective assistance of counsel or prosecutorial misconduct." *Id.*

When examining plea agreements that use this standard waiver language, we have recognized that a waiver of the right to appeal a "sentence" covers more than just a prison term. *See United States v. Nykoriak*, 803 F. App'x 919, 921 (6th Cir. 2020). It also covers restitution orders. *See United States v. Riccardi*, 989 F.3d 476, 489 (6th Cir. 2021) (citing cases). Even more relevant here, it covers the lengths and conditions of supervised release, which likewise qualify as part of the sentence. *See Nykoriak*, 803 F. App'x at 921 (quoting *United States v. Krul*, 774 F.3d 371, 374 (6th Cir. 2014)); *see also United States v. Miller*, 755 F. App'x 440, 445–46 (6th Cir. 2018); *United States v. Rand*, 536 F. App'x 571, 576–77 (6th Cir. 2013); *United States v. Kidd*, 2013 WL 870263, at *1 (6th Cir. 2013) (per curiam); *Ferguson*, 669 F.3d at 764–67; *United States v. Meeks*, 290 F. App'x 896, 904–05 (6th Cir. 2008); *United States v. McIntosh*, 2003 WL 22435676, at *1 (6th Cir. Oct. 23, 2003) (order). So appeal waivers have barred defendants from appealing such supervised-release conditions as a limit on the use of cellphones, *see Rand*, 536 F. App'x at 576–77, a restriction on the use of the internet, *see Ferguson*, 669 F.3d at 765–66, and a requirement to receive mental-health treatment, *see Kidd*, 2013 WL 870263, at *1.

Many other courts apply similar rules. *See Ferguson*, 669 F.3d at 766 n.2. They agree that an appeal waiver covering a sentence includes a supervised-release condition. *See United States v. Dallman*, 886 F.3d 1277, 1279, 1280–81 (8th Cir. 2018); *United States v. Santiago*, 769 F.3d 1, 7 (1st Cir. 2014); *United States v. Goodson*, 544 F.3d 529, 537–38 (3d Cir. 2008); *United States v. Sandoval*, 477 F.3d 1204, 1207 (10th Cir. 2007); *United States v. Joyce*, 357 F.3d 921, 923–24 (9th Cir. 2004); *United States v. Sines*, 303 F.3d 793, 798–99 (7th Cir. 2002). So they have likewise held that an appeal waiver covered such supervised-release conditions as those requiring

a defendant to attend sex-offender treatment, *see Sines*, 303 F.3d at 798–99, or barring the defendant from contacting minors, *see Santiago*, 769 F.3d at 6–8.

Under this caselaw, Booker's appeal waiver covers his current challenge to his supervised-release conditions. He agreed to waive his right to appeal his "sentence," which includes the supervised-release conditions. *See Nykoriak*, 803 F. App'x at 921. And his challenge to the supervised-release conditions does not fall within any of his appeal waiver's carveouts. He does not claim that his sentence exceeds the statutory maximum or guidelines range, and he does not raise an ineffective-assistance claim. *See Ferguson*, 669 F.3d at 766.

In response, Booker does not even dispute that the appeal waiver applies. He instead argues that he did not knowingly waive his right to appeal the supervised-release conditions because he "could not have known" that the district court would impose them when he pleaded guilty. Reply Br. 3. It is not clear that he preserved this argument because he never asserted in the district court that his appeal waiver had been unknowing and involuntary. *See Goodson*, 544 F.3d at 538–39; *see also United States v. Rupp*, 2023 WL 370908, at *3 (6th Cir. Jan. 24, 2023). His claim fails under de novo review, though, so we need not resolve this issue.

Booker is correct that we could not enforce his appeal waiver if he did not knowingly and voluntarily agree to it. *See Ferguson*, 669 F.3d at 765. Yet both the plea agreement and the plea colloquy show that he knowingly and voluntarily waived his right to appeal. He initialed every page of the agreement to "signify" that he approved each page's provisions, including the pages with the appeal waiver. Plea Agreement, R. 17, PageID 47, 51. He also made clear that he had read the entire agreement, discussed it with his attorney, and "enter[ed]" it "voluntarily and of [his] own free will." *Id.*, PageID 51. During the plea colloquy, he confirmed his understanding that he would "be required to abide by a number of conditions" on supervised release, including that he

"not commit any new criminal offenses, not use drugs, report to [his] probation officer, get a legitimate job, [and] things of that nature." Plea Tr., R.38, PageID 395. He also confirmed his understanding that "there will be no basis for an appeal" of his sentence except for the specific grounds that his plea agreement preserved. *Id.*, PageID 400.

Booker nevertheless argues that his lack of knowledge of the *specific* conditions that the district court imposed rendered his appeal waiver unknowing and involuntary. We and other courts have rejected similar claims. The defendant in *Ferguson*, for instance, "did not receive prior notice" of the condition restricting his internet access. 669 F.3d at 765. Yet we enforced the appeal waiver because he knew generally that the court would impose supervised-release conditions. *Id.* at 766. Similarly, the defendant in *Sandoval* (who had been convicted of property crimes) did not know that the court would limit his access to children. 477 F.3d at 1206. But the Tenth Circuit enforced his appeal waiver because he knew generally that he could not appeal his sentence. *Id.* at 1207–08. As the Seventh Circuit has said, "unanticipated sentences do not create grounds for negating the terms of a plea agreement." *Sines*, 303 F.3d at 799. And here, Booker had the same knowledge that these decisions found sufficient: He knew that he would be subject to supervised-release conditions and that he generally could not appeal his sentence.

That said, some courts have suggested that a "miscarriage of justice" exception could invalidate an appeal waiver for some supervised-release conditions. *See, e.g.*, *Santiago*, 769 F.3d at 8–11; *Sandoval*, 477 F.3d at 1208. We need not reach this issue because Booker did not raise it. He argued only that his waiver was unknowing and involuntary. He is wrong.

We affirm.

10