# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 10, 2012

No. 11-20091

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE MANUEL LUCIO CHAVEZ, also known as Jose Lucio, also known as
Jose Manuel Lucio-Chavez, also known as Jose Manuel Lucio,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 4:10-cr-00455-1

Before GARZA, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

The defendant, Jose Manuel Lucio Chavez, challenges the district court's
application of an enhancement to his sentence, pursuant to U.S.S.G.
§ 2L1.2(b)(1)(B).[1] The enhancement was imposed on the ground that Chavez had

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] Citations are to the 2010 Sentencing Guidelines, the version in effect when Chavez
was sentenced, and which was used by the district court in sentencing him. *See* U.S.S.G.
§ 1B1.11(a).

No. 11-20091

previously been deported after "a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less." Chavez's sentence of incarceration for his prior Texas drug trafficking conviction had been suspended, and he was placed on community supervision. However, his community supervision was subsequently modified to require him to serve up to a year in a residential substance abuse facility run by the Texas Department of Criminal Justice. We AFFIRM Chavez's sentence.

## BACKGROUND

In 2010, Chavez pleaded guilty without a plea agreement to one count of illegal reentry after removal, in violation of 8 U.S.C. § 1326(a) and (b). The district court sentenced him several months later. Chavez's base offense level was eight. *See* U.S.S.G. § 2L1.2(a). The district court applied a 12-level enhancement because Chavez had previously been deported subsequent to a prior felony drug trafficking conviction, "for which the sentence imposed was 13 months or less." U.S.S.G. § 2L1.2(b)(1)(B). The district court also subtracted three levels for acceptance of responsibility, so that his total offense level was 17. Chavez's criminal history score was nine, placing him in criminal history category IV. The resulting advisory guideline sentencing range was 37 to 46 months of imprisonment; Chavez received 37 months.

Chavez's felony drug trafficking conviction was a 1996 Texas conviction for delivery of cocaine by actual transfer.[2] At the proceeding where Chavez pleaded guilty, the state court sentenced him to two years of imprisonment, but suspended that sentence. Chavez was instead placed on community supervision for five years. A year later, the state of Texas alleged that Chavez had violated the terms of his community supervision. The state court continued Chavez's community supervision, but modified its terms to include a condition that he

---

[2] Chavez does not challenge the district court's determination that his Texas conviction constitutes a felony drug trafficking conviction.

No. 11-20091

remain in a substance abuse felony punishment facility (SAFPF) for up to one year.

Texas law states that if a state court "continues or modifies community supervision after determining that the defendant violated a condition of community supervision, the judge may impose any other conditions the judge determines are appropriate, including . . . the placement of the defendant in a substance abuse felony punishment program." Tex. Code Crim. Proc. art. 42.12 § 22(a)(4). Chavez does not dispute that persons who are ordered to participate in an SAFPF program are not free to leave. *See* Tex. Gov't Code § 493.009(a) (directing the Texas Department of Criminal Justice to create SAFPFs as "a program to *confine* and treat," inter alia, "defendants required to participate in the program under [Tex. Code Crim. Proc. art. 42.12]" (emphasis added)); *id.* § 493.009(d) (explaining that the release date for a participant is determined by a "qualified professional"); Tex. Code Crim. Proc. art. 42.12 § 23(b) (referring to time spent "in a substance abuse treatment facility operated by the Texas Department of Criminal Justice under [Tex. Gov't Code § 493.009], or *another* court-ordered *residential* program or facility" (emphases added)).

Chavez argued to the district court that his period of confinement in the SAFPF did not constitute a "sentence imposed" for the purposes of U.S.S.G. § 2L1.2(b)(1)(B). His objection was overruled, and Chavez timely appealed.

## STANDARD OF REVIEW

This case requires us to decide whether the district court erred in applying an enhancement, pursuant to U.S.S.G. § 2L1.2(b)(1)(B), for Chavez's 1996 Texas conviction. This court "review[s] the district court's application of the sentencing guidelines *de novo*." *United States v. Jasso*, 587 F.3d 706, 709 (5th Cir. 2009).

## ANALYSIS

A defendant being sentenced for illegal reentry is subject to a 12-level increase if he was previously deported following "a conviction for a felony drug

trafficking offense for which the *sentence imposed* was 13 months or less."
U.S.S.G. § 2L1.2(b)(1)(B) (emphasis added).  The applicable commentary
explains that "'[s]entence imposed' has the meaning given the term 'sentence of
imprisonment' in Application Note 2 and subsection (b) of § 4A1.2."  U.S.S.G. §
2L1.2, cmt. n.1(B)(vii).  In turn, § 4A1.2(b) states:

> (1)  The term "sentence of imprisonment" means a sentence of
> incarceration and refers to the maximum sentence imposed.
>
> (2)  If part of a sentence of imprisonment was suspended,
> "sentence of imprisonment" refers only to the portion that
> was not suspended.

U.S.S.G. § 4A1.2(b).  Here, Chavez's sentence of two years of incarceration was
suspended in its entirety.  However, Application Note 2 of § 4A1.2 also indicates
that a "sentence of probation" *does* constitute a sentence of imprisonment if "a
condition of probation requir[es] imprisonment."  U.S.S.G. § 4A1.2, cmt. n.2.[3]
Thus, the question is whether Chavez's confinement in the SAFPF constitutes
a sentence of imprisonment.[4]

In addition to § 4A1.2, another Guidelines provision, § 4A1.1, and its
accompanying commentary, shed light on the meaning of "sentence of
imprisonment."[5]  In *United States v. Brooks*, 166 F.3d 723 (5th Cir. 1999), we

---

[3] Application Note 2 states that a sentence of probation constitutes a sentence under
§ 4A1.1(c) — i.e., a sentence of imprisonment "of less than 60 days," or "probation, fines, and
residency in a halfway house, *see* U.S.S.G. § 4A1.1 cmt. background.  U.S.S.G. § 4A1.2, cmt.
n.2.  But if the sentence of probation includes a condition "requiring imprisonment of at least
sixty days," then it constitutes a sentence under § 4A1.1(b) (sentence of imprisonment of at
least sixty days) or § 4A1.1(a) (a sentence of imprisonment exceeding one year and one month).
U.S.S.G. § 4A1.2, cmt. n.2.

[4] We note that this court has held that a defendant's sentence, which "was suspended
with five years' probation," was not a "sentence imposed" for the purposes of § 2L1.2(b)(1)(B).
*United States v. Rodriguez-Parra*, 581 F.3d 227, 229 (5th Cir. 2009).  However, in *Rodriguez-Parra*, the defendant was not ordered to be confined while he was on probation.  Here, in
contrast, Chavez was ordered to be confined in an SAFPF.

[5] This is because § 4A1.2 provides definitions and instructions for computing criminal
history, and criminal history categories are actually calculated under § 4A1.1.

held that a defendant's time in a "boot camp" constituted "a sentence of imprisonment" for the purposes of § 4A1.1. *Id.* at 726. We explained that the dispositive factor was whether the defendant was physically confined while serving his prior sentence, and that "[t]he commentary to U.S.S.G. § 4A1.1 . . . expressly distinguish[es]" sentences that do "not requir[e] twenty-four hours a day physical confinement, such as 'probation, fines, and residency in a halfway house,'" from those that do require such confinement. *Id.* at 727.[6] Thus, in *Brooks*, although the defendant had not been incarcerated, because he "was not free to leave the boot camp," we concluded that "his confinement there" constituted a "sentence of imprisonment." *Id.*

Here, Chavez does not dispute that he was likewise confined to the SAFPF, and was not free to leave. Thus, his time in an SAFPF constitutes a "sentence of imprisonment" for the purposes of §§ 4A1.1 and 4A1.2. And, as noted above, a "sentence imposed" for the purposes of § 2L1.2(b)(1)(B) "has the meaning given the term 'sentence of imprisonment'" in § 4A1.2. U.S.S.G. § 2L1.2(b), cmt. n.1(B)(vii). Accordingly, Chavez's time in an SAFPF constitutes a "sentence imposed" for the purposes of § 2L1.2(b)(1)(B).

Additionally, under *Brooks*, Chavez's argument that placement in an SAFPF constitutes community confinement rather than imprisonment under Texas law, and thus should not be a "sentence of imprisonment," is unavailing. In *Brooks*, the defendant raised the same argument, explaining "that Texas law treats boot camp as community corrections, not imprisonment." 166 F.3d at 726. This court rejected that argument, stating:

> "Section 4A1.2(b) of the guidelines defines a sentence of imprisonment as a 'sentence of incarceration.' This suggests that

---

[6] Although *Brooks* was decided in 1999, the commentary to § 4A1.1 in the 2010 version of the Guidelines continues to draw a distinction between sentences of imprisonment, which the commentary refers to as "confinement sentences," and sentences such as "probation, fines, and residency in a halfway house." *See* U.S.S.G. § 4A1.1, cmt. background.

physical confinement is a key distinction between sentences of imprisonment and other types of sentences. The guidelines make no distinction between offenders incarcerated primarily for rehabilitation and those incarcerated simply to remove the offender from society."

*Id.* at 726-27 (quoting *United States v. Vanderlaan*, 921 F.2d 257, 259 (10th Cir. 1990)).[7]

Moreover, the fact that Chavez was not initially sentenced to serve time in an SAFPF does not affect whether his sentence constitutes a "sentence imposed." Nothing in the applicable Guidelines or accompanying commentary indicates that the sentence can only be the one that was initially pronounced, without inclusion of any later modifications.

Finally, the rule of lenity does not operate here in Chavez's favor. "The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." *United States v. Mendez-Casarez*, 624 F.3d 233, 241 (5th Cir. 2010) (quoting *Reno v. Koray*, 515 U.S. 50, 65 (1993) (citations and quotation marks omitted)). In *United States v. Bustillos-Pena*, 612 F.3d 863 (5th Cir. 2010), this court applied the rule of lenity in a case where the question was whether a defendant's prior conviction qualified him for a sentence enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A).[8] The difficulty in *Bustillos-Pena* was that the defendant's probation for the prior conviction was revoked only *after* he had illegally reentered the country. *Id.* at 864. This court concluded that the provision was ambiguous, explaining that applying the enhancement would mean "that a guideline enhancement designed

---

[7] Chavez also argues that his time in the SAFPF would not count towards credit for serving a term of imprisonment under Texas or federal law. Assuming that this argument is true, it may point out an inconsistency in the Guidelines, but does not require us to deviate from the settled interpretation of "sentence imposed" under U.S.S.G. § 2L1.2(b).

[8] U.S.S.G. § 2L1.2(b)(1)(A) provides for a 16-level enhancement where the defendant was previously deported for "a drug trafficking offense for which the sentence imposed exceeded 13 months."

No. 11-20091

to reflect the nature of a defendant's illegal reentry offense could be triggered by unrelated conduct that occurred long *after* the reentry." *Id.* at 867 (emphasis added); *see also id.* at 867-68 (noting that applying the enhancement where probation was revoked after illegal reentry would lead to disparate outcomes, depending on whether the defendant was first apprehended by immigration or state authorities).

The concerns implicated in *Bustillos-Pena* do not apply here, however, because Chavez's sentence was modified *before*, not after he was deported. Chavez was sentenced to confinement in the SAFPF in August 1997, and he was removed in March 1998. Thus, we are able to "make more than a guess" at what the Sentencing Commission intended, so the rule of lenity does not operate in Chavez's favor.

## CONCLUSION

For the above reasons, we AFFIRM Chavez's sentence.