# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
March 21, 2014

Lyle W. Cayce
Clerk

No. 13-10291

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JUAN CARLOS CASTANEDA MENDEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CR-167-1

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Juan Carlos Castaneda Mendez appeals the district court's enhancement of his sentence pursuant to U.S.S.G. § 4A1.1(a) based on its determination that he served a prior sentence of imprisonment of more than one year and one month for a 2003 burglary conviction. We AFFIRM.

## FACTS AND PROCEDURAL HISTORY

A Texas jury convicted Mendez of burglary of a habitation in 2003. The Texas court sentenced Mendez to what is called "shock probation." The

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10291

sentence of imprisonment was for ten years, but after serving only 180 days in prison, Mendez was placed on community supervision. See TEX. CODE CRIM. PROC. ANN. art. 42.12, § 6. Mendez was subsequently arrested for driving with a suspended license and possession of cocaine. The State filed a motion to revoke his community supervision but later withdrew the motion. The court then modified the terms of Mendez's community supervision to include a term of up to one year in a Texas substance abuse felony punishment facility ("SAFPF"). Mendez served 365 days in an SAFPF and was under community supervision when he was arrested for illegal reentry in 2013.

Mendez pled guilty to illegal reentry. See 8 U.S.C. § 1326(a). The presentence report ("PSR") assigned seven points as a criminal history score, three of which were based on U.S.S.G. § 4A1.1(a) due to Mendez's sentence for burglary. Section 4A1.1(a) provides for a three-point addition to a defendant's criminal history score if the defendant served a "sentence of imprisonment exceeding one year and one month" for a prior conviction. Mendez objected, arguing that the time he spent in the SAFPF under a suspended sentence did not count for purposes of Section 4A1.1(a) because the confinement was not the result of revocation of his prior sentence. The district court overruled the objection and applied the enhancement based on its determination that the nature of Mendez's confinement in an SAFPF amounted to imprisonment under Section 4A1.1(a).

Mendez's criminal history category was IV, which, considered together with the base offense level of 14, resulted in a recommended guideline range of 27 to 33 months imprisonment. The district court sentenced Mendez to 25 months imprisonment, after crediting him with two months for time he was detained by the immigration office pending his indictment. Had the court sustained his objection, Mendez's criminal history category would have been III, which would have resulted in a recommended guideline range of 21 to 27

No. 13-10291

months.  Mendez claims that since the district court expressed a desire to stay at the bottom of the recommended guideline range and was willing to credit him for his pre-indictment detention, he would have received a 19-month sentence but for the district court's error.

Mendez's only appellate issue concerns his criminal history score.  He argues that his initial imprisonment of 180 days for burglary, which was less than the one year and one month required for 3 criminal history points under Section 4A1.1(a), should not have been aggregated with the subsequently imposed 365 days in an SAFPF.  This issue was first raised by Mendez in his objections to the PSR and was argued, albeit not with complete clarity, at his sentencing hearing.  The district court seemingly understood Mendez to be challenging Section 4A1.1(a)'s enhancement because time served in the Texas SAFPF did not constitute imprisonment for purposes of Section 4A1.1(a).  The district court accepted the PSR *in toto*.

## DISCUSSION

"This Court reviews the application of the sentencing guidelines *de novo*." *United States v. Valdez-Valdez*, 143 F.3d 196, 197 (5th Cir. 1998).

The Sentencing Guidelines provide that three points should be added to a defendant's criminal history score for "each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a).  A prior sentence is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." *Id.* § 4A1.2(a).  According to a comment in the Guidelines, a completely suspended sentence of imprisonment does not count toward the one-year-and-one-month calculation under Section 4A1.1(a), "unless a condition of probation requiring imprisonment of at least sixty days was imposed."  U.S.S.G. § 4A1.2(a)(3) & cmt. n.2.  This commentary has the same

3

weight as the Guidelines, provided it is not plainly erroneous. *United States v. Rodriguez-Parra*, 581 F.3d 227, 229 n.3 (5th Cir. 2009).

Mendez has argued on appeal that the district court misunderstood the nature of his objection. To the extent Mendez has argued that time served in an SAFPF is not imprisonment under Section 4A1.1(a) because of the nature of the confinement, he is incorrect. Time served in a facility where a defendant is not free to leave qualifies as imprisonment under Section 4A1.1(a). *United States v. Brooks*, 166 F.3d 723, 727 (5th Cir. 1999). We have previously held in an unpublished decision that the SAFPF is such a facility. *United States v. Chavez*, 476 F. App'x 786, 790 (5th Cir. 2012). We agree with the analysis in *Chavez* that time in an SAFPF constitutes imprisonment. The district court did not err in finding that Mendez's year in the SAFPF was a term of imprisonment under Section 4A1.1(a).

Mendez's principal argument, which was not addressed by the district court at sentencing, is whether his community supervision had to be revoked before his time in the SAFPF could properly be aggregated with his original six month term of imprisonment. We conclude that Mendez's objections to the PSR made this argument. Mendez relies on Section 4A1.2(k): "In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation." Mendez argues that an actual revocation is required and, consequently, before a subsequently imposed term of imprisonment may be added to an original term, it must have arisen after proceedings that satisfy the constitutional standards established by *Morrissey v. Brewer,* 408 U.S. 471 (1972).

Though Mendez challenges the criminal history calculation based on his interpretation of Section 4A1.2(k), the PSR and the district court's ruling do not refer to that subsection. Instead, the PSR states that three criminal history

points should be assigned due to Section 4A1.1(a). That subsection provides for three history points for "each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). Admittedly, that subsection is a proper reference regardless of whether some other Guideline provides additional relevant guidance. In an addendum to the PSR, the Probation Office responded to Mendez's Section 4A1.2(k) arguments by saying that Mendez's original incarceration for 180 days and his 365 days in an SAFPF amounted to 545 days of confinement, which allowed for the criminal history points under Section 4A1.1(a). The addendum did not discuss the language of Section 4A1.2(k). The district court's statement of reasons for the sentence adopted the PSR "without change."

Despite the absence of any reference to Section 4A1.2(k), we accept that one reading of the PSR and the district court's ruling is that Section 4A1.1(a) is applicable because the prior sentence was more than one year and a month due to the revocation provision.

On appeal, the Government urges us to ignore Section 4A1.2(k). It argues that it is appropriate to add the 365 days of imprisonment imposed upon modification of Mendez's sentence to the original 180 days imprisonment simply because both terms of imprisonment were imposed for the same adjudication of guilt of the burglary offense. Of unclear significance, the government also points out that the aggregate time served by Mendez falls within the district court's original sentence of ten years.

This argument is similar to one considered by an earlier panel in an unpublished opinion. *See Chavez*, 476 F. App'x at 788-89. The defendant had received a suspended sentence from a state court, then later had the sentence modified such that he was to spend up to one year in an SAFPF. There was no revocation. Under a Texas statute, community supervision may be modified if one of its conditions has been violated; the modification can include placing the

defendant in an SAFPF. *Id.* at 787. The court held that the modified community supervision that added a term of restriction or imprisonment in an SAFPF was a "sentence of incarceration" under Section 4A1.1. It did not matter that Chavez received that sentence in a modification:

> Nothing in the applicable Guidelines or accompanying commentary indicates that the sentence can only be the one that was initially pronounced, without inclusion of any later modifications.

*Chavez*, 476 F. App'x at 789.

Mendez asserts that this prior opinion is not relevant. He points out that a different Guideline was applied in *Chavez*, namely, Section 2L1.2(b), which concerns specific characteristics of offenses committed after unlawful entry into or remaining in the United States. Chavez's specific offense was drug trafficking "for which the sentence imposed was 13 months or less. . . ." *Id.* at 787; *see* U.S.S.G. § 2L1.2(b)(1)(B). In deciding whether Chavez's SAFPF sentence, which was a modification of his original community supervision due to his violation of supervision terms, the court relied on Section 4A1.2(b)(2): "If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." The court then referred to the same Application Note we have already quoted: if a condition of probation is that the defendant serve at least sixty days imprisonment, that incarceration is counted. U.S.S.G. § 4A1.2, cmt. n.2.

We disagree with Mendez. It does not matter here that *Chavez* was initially discussing a different Guideline, as the court then used the same criminal history Guidelines we must apply. Section 4A1.1 is entitled "Criminal History Category," while Section 4A1.2 is called "Definitions and Instructions for Computing Criminal History." Those sections applied in *Chavez* just as they do here.

No. 13-10291

The Government's argument is straightforward.  Mendez received an initial sentence of imprisonment of 180 days, then received, on the same conviction, an additional sentence of 365 days as a modification of the nature of his supervision, not a revocation of that supervision.  Section 4A1.2(k), the Government suggests, simply does not apply.

We consider one more part of the Guidelines to be relevant.  To count toward criminal history, a "prior sentence" must be one that was "imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere . . . ."  U.S.S.G. § 4A1.2(a)(1).  The original sentence of community supervision imposed on Mendez followed an adjudication of guilt of the underlying crime of burglary, but the modification did not follow an adjudication of guilt of violations of supervision.  Section 4A1.2(k) provides clarity that should the procedures for revocation of probation, parole, and the like have been followed, a new term of imprisonment may be added together with the original term.  Mendez's community supervision modification definitely was not based on a revocation, as the motion to revoke had been withdrawn.  Instead, the only document we discover in the record relevant to this is an order of September 6, 2006, in which a state trial judge ordered that the conditions of community supervision be modified to add a period of confinement within an SAFPF for between 6 and 12 months.  No findings of any kind, including about violations of conditions of supervision, appeared in the order that modified the sentence.

The Government's argument that the period of confinement in the SAFPF can be added to the initial incarceration suggests we do two things:  (1) ignore Section 4A1.2(k) on revocation as irrelevant to Mendez's modified sentence of community supervision, and (2) interpret "sentence imposed upon adjudication of guilt" under Section 4A1.2(a)(1) to include a later modification

to the original sentence of community supervision, even when the revised sentence included a period of confinement.

As to why we may not properly ignore the subsection on revocation, Mendez relies heavily on a Ninth Circuit case. *See United States v. Ramirez*, 347 F.3d 792 (9th Cir. 2003). In that case, the defendant was on parole. A parole board twice determined that his parole should not be revoked, but each time Ramirez was ordered to spend a few weeks in temporary detention. *Id.* at 796-97. The district court held that because there was no revocation of parole, Section 4A1.2(k) was inapplicable, and the brief detentions were not relevant to his criminal history. *Id.* at 797. On appeal, the court focused on whether Ramirez's modification amounted to a constructive revocation. *Id.* at 799. The Ninth Circuit held that it did not because the hearing Ramirez received did not meet the constitutional standards for a revocation hearing established by the Supreme Court in *Morrissey*. *Id.* at 801. The court ascribed special meaning to the Commission's use of the term "revocation" and suggested that Section 4A1.2(k) prevents any aggregations under Section 4A1.1(a) that do not occur through revocation. *Id.*

*Ramirez* stands alone. Our research reveals that all other circuits to address the question have interpreted the phrase "revocation of probation" broadly enough to apply to terms of imprisonment that were not imposed through formal revocation proceedings. *See United States v. Galvan,* 453 F.3d 738, 741 (6th Cir. 2006); *United States v. Glover*, 154 F.3d 1291, 1295-96 (11th Cir. 1998); *United States v. Reed*, 94 F.3d 341, 346 (7th Cir. 1996); *United States v. Glidden*, 77 F.3d 38, 40 (2d Cir. 1996). These courts reasoned that allowing a district court to aggregate two terms of imprisonment imposed for the same prior conviction under Section 4A1.2(k) is consistent with the purpose of that Guideline and more fundamentally with the purpose of Chapter Four of the Sentencing Guidelines. *Id.*

We do not explore this issue further, as the Government stated in its brief that it does not advance the possibility of using the subsection on revocation. Though we apply *de novo* review to the application of the Guidelines, we generally do not rely on arguments not fully briefed by the parties. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

Thus what is left is the Government's argument that there is only one prior sentence, imposed immediately after the initial adjudication of guilt, and for criminal history purposes the sentence includes any confinement such as to an SAFPF ordered after modification of the original community supervision. The question is one of federal law, not that of Texas. *Brooks*, 166 F.3d at 727. The question is whether a sentence that modifies the terms of community supervision can be said to arise from the original adjudication of guilt.

The Guidelines do not directly address this situation. As we quoted already, the *Chavez* court noted that the Guidelines and commentary do not state "that the sentence can only be the one that was initially pronounced, without inclusion of any later modifications." *Chavez*, 476 F. App'x at 789. Not at issue is the power of a Texas state court to modify under its own procedures, and there is no constitutional argument before us that any defect under federal law exists in the modification. The only issue is how the modification should be treated for purposes of criminal history.

We conclude that the natural interpretation of the words of Section 4A1.2(a)(1), that a prior sentence is one "previously imposed upon adjudication of guilt," looks to the currently operative sentence for that conviction. Under Texas law, the trial judge retained the power to modify the part of the sentence regarding community supervision. Thus the sentence, based on the original adjudication, was always subject to modification in certain limited ways and after following certain procedures that we will discuss. Using that power, the judge added an obligation of supervision in a substance-abuse facility. We

conclude the revised sentence is the one that was imposed upon, *i.e.*, as a result of, an adjudication of guilt.

We also consider it relevant that allowing this interpretation would not undermine Section 4A1.2(k). If our interpretation would allow for bypassing that specific Guideline provision, we risk weakening it or even making it superfluous. On this question, it is important to know how Texas governs community supervision. The sentencing court retains jurisdiction to revoke or modify the supervision after notice and hearing. TEX. CODE CRIM. PROC. ANN. art. 42.12. The Texas Court of Criminal Appeals has examined the process for revocation of community supervision and determined that *Morrissey* applies. *Ex parte Carmona*, 185 S.W.3d 492, 495-96 (Tex. Crim. App. 2006) (plurality op.). A later opinion pointed out one distinction that it thought likely did not make a constitutional difference, which is that there is no preliminary hearing to determine probable cause before an independent parole officer. *Ex parte Doan*, 369 S.W.3d 205, 209-10 (Tex. Crim. App. 2012) (plurality op.). The procedures apply not only to revocations but also to modifications. TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 21 & 22. Instead of a hearing, it appears that Mendez waived his rights and agreed to the modification. At least there is no suggestion that what occurred in 2006 to modify the community supervision was objected to in any way.

In sum, Texas courts have held that the provisions of Texas Article 42.12 for community supervision modifications largely comply with the due process requirements applicable to parole and probation revocations. No one argues the point in this appeal. Consequently, considering a modification of community supervision imposed after waiver of those procedures to be a sentence of imprisonment for purposes of Section 4A1.1, does not trench upon the protections of Section 4A1.2(k) regarding revocations.

No. 13-10291

The sentence of 365 days after modification of community service was properly added to the initial sentence of 180 days. The determination of criminal history was correct.

The motion for expedited consideration is denied.

AFFIRMED

No. 13-10291

PATRICK E. HIGGINBOTHAM, Circuit Judge, dissenting:

Juan Carlos Castaneda Mendez was sentenced to ten years imprisonment for a burglary conviction. All but 180 days was suspended, with the remainder to be served as "shock probation." Several years later while Castaneda Mendez was on probation, the judge modified the terms of his probation to require he spend 365 days in a substance abuse felony punishment facility (SAFPF). It is undisputed that the judge did not revoke Castaneda Mendez's probation.

The main issue presented now is whether the district court, in calculating a sentencing enhancement for a prior term of imprisonment of one year and one month or more, may aggregate the 180 days Castaneda Mendez originally served with the 365 days in the SAFPF to reach the period required for enhancement. The Sentencing Guidelines specifically provide for aggregation of sentences in U.S.S.G. § 4A1.2(k), which states that "[i]n the case of a prior revocation of probation . . . add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable."

This is the precise scenario presented here, with the sole exception being that the constitutional protections of a formal revocation of probation were not provided. Having failed to meet the requirements for aggregation under U.S.S.G. § 4A1.2(k), the government urges us to disregard that provision altogether and aggregate Castaneda Mendez's sentences under U.S.S.G. § 4A1.2(a)(1), a generic provision that says nothing about aggregation and simply defines "prior sentence" to mean "any sentence previously imposed upon adjudication of guilt." This asks us to hold that a specific provision for the aggregation of sentences if and when probation has been revoked is of no

12

No. 13-10291

moment. But "[a]s always, where there is no *clear* intention otherwise, a specific statute will not be controlled or nullified by a general one."[1] In line with "our longstanding practice of construing statutes *in pari materia*,"[2] the provision in the same statute that deals precisely with the situation here— where an initial term of imprisonment is followed by probation and then by imprisonment when the terms of probation are violated—must be read together with the generic provision that simply defines "prior sentence" as "any sentence previously imposed upon adjudication of guilt." If no "aggregation mechanism" is needed, as the government urges, § 4A1.2 is an odd statutory scheme indeed: one that provides for the aggregation of sentences when probation formally is revoked but also allows courts to aggregate sentences on no authority at all when probation merely is modified. This reading renders § 4A1.2(k) entirely superfluous.

Nor is the distinction between revocation and modification one without a difference. The meaningful differences between "modification" and "revocation" are not lightly dismissed by district court judges, and should not be by this Court. Revocation is a very different procedure than modification, a distinction appreciated by the Sentencing Guidelines themselves.[3] Before a

---

[1] *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (quotation marks and alterations omitted) (emphasis in original). *See also, e.g.*, *Hinck v. United States*, 550 U.S. 501, 506 (2007) (describing the "well-established principle" that "a precisely drawn, detailed statute preempts more general remedies" (internal quotation marks and citations omitted)); *EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007) (same); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." (quoting *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974))).

[2] *Crawford Fitting Co.*, 482 U.S. at 445.

[3] *See, e.g.*, U.S.S.G. § 7B1.3 (explaining a court's discretion to revoke probation, on the one hand, or modify or extend its terms, on the other, and the factors and consequences that apply to each).

revocation of parole or probation can occur, the Constitution weighs in, requiring that there be (1) a formal finding that a probationer has committed a violation and (2) a determination that the violation was serious enough to warrant reimposing the probationer's original sentence.[4] Because the consequences of the revocation process are serious, the probationer must be afforded an opportunity to present evidence to suggest that his violation does not warrant revocation.[5] Due Process requires both a preliminary hearing to determine whether there was reasonable cause to believe that a probationer violated the conditions of his probation, and if requested a final revocation hearing to determine whether revocation actually is warranted.[6] These procedural safeguards ensure that the more serious consequences of revocation—among many others, the aggregation of sentences under § 4A1.2(k)—are not imposed without Due Process safeguards. As *Morrissey* recognized, lower court judges and probation authorities are better positioned to determine, in their discretion, which sanction is appropriate for a defendant's particular situation.[7] For this Court to gloss over § 4A1.2(k)'s explicit requirement that the more serious sanction of revocation be imposed before two sentences can be aggregated undermines the balance struck by the

---

[4] *Morrissey v. Brewer*, 408 U.S. 471, 479–80 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (extending requirements of *Morrissey* to probation revocation hearings).

[5] *See Morrissey*, 408 U.S. at 482, 487–88.

[6] *Id.* at 486–88.

[7] 408 U.S. at 480 (The question whether revocation is necessary "involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts. This part of the decision, too, depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were. Yet this second step, deciding what to do about the violation once it is identified, is not purely factual but also predictive and discretionary.")

No. 13-10291

Sentencing Guidelines and by sentencing judges, and I decline to do so absent compelling justification.

The majority is mollified by a suggestion, not argued or briefed by either party, that the procedures for revocation of community supervision apply also to modifications under Texas Code of Criminal Procedure Article 42.12, and that these largely comply with the Due Process requirements applicable to parole and probation revocations. But while the requirement of a preliminary hearing under Tex. Art. 42.12 § 21 applies to both modifications and revocations, the similarity under Texas law ends there. Modification is addressed in 42.12 § 22; revocation is addressed separately under § 23, and only the latter mentions a right to appeal.[8] The Texas statute likewise grants more extensive powers to a judge who revokes community supervision under § 23, such as "proceed[ing] to dispose of the case as if there had been no community supervision," consistent with the higher Due Process bar that must be met. Moreover, as the majority concedes, *Ex Parte Carmona*[9] recognized only that the Due Process protections outlined in *Morrissey* apply to *revocation* of community supervision—I find no authority that suggests Texas extends these same Due Process protections to mere modifications of the same.

I thus find persuasive the reasoning of *United States v. Ramirez*,[10] where it likewise was undisputed that parole was not revoked, insofar as it held that modification cannot serve as revocation of probation to aggregate sentences under § 4A1.2(k). While this decision stands alone in squarely deciding the issue presented here, so does the Eleventh Circuit's decision to the contrary in

---

[8] Tex. Code. Crim. Proc. Art. 42.12 § 23(b).

[9] 185 S.W.3d 492, 495–96 (Tex. Crim. App. 2006) (plurality op.).

[10] 347 F.3d 792 (9th Cir. 2003).

*United States v. Glover.*[11]  But the Eleventh Circuit's reasoning is unpersuasive insofar as it fails to provide a compelling justification for departing from the plain text requirement of "revocation" in § 4A1.2(k) and the distinctions drawn elsewhere—by Due Process as articulated in *Morrisey*, by district judges, and by the Sentencing Guidelines themselves—between modification and revocation.

Finally, the government urges us to look to *Chavez*,[12] an unpublished opinion where we held that modification of probation that required the defendant to attend a SAFPF for up to one year constituted a sentence of imprisonment for a sentencing enhancement under a different provision, U.S.S.G. § 2L1.2(b)(1)(B).  But unlike Castaneda Mendez, who served an initial term of 180 days that the government seeks to aggregate with the later SAFPF term, the entirety of Chavez's sentence was initially suspended.  There being no multiple stays behind bars to aggregate, *Chavez* has little to say about the difficult aggregation question presented here.

I take no issue with the majority's holding that an SAFPF qualifies as a term of imprisonment.  But I cannot look past the plain text of § 4A1.2(k) in ignoring the specific for the general when the requirements of the former are not met.  Nor can I accept the odd statutory scheme that results, in which

---

[11] 154 F.3d 1291 (11th Cir. 1998).  Of the four cases cited by the majority opinion, only *Glover* explicitly addressed the modification versus revocation distinction that troubles us here.  In the other three cases, the probationer was resentenced to probation after the period of incarceration. *See United States v. Reed*, 94 F.3d 341, 342–43 (7th Cir. 1996); *United States v. Glidden*, 77 F.3d 38, 39 (2d Cir. 1996); *United States v. Galvan*, 453 F.3d 738, 740 (6th Cir. 2006) (noting that the court found it "telling" that an electronic monitoring condition of probation had to be "reinstated" after a prison term, in concluding that probation was constructively revoked despite the lack of specific terminology to that effect).  This procedure is more in line with the common understanding of "revocation" and thus does not squarely present the difficult issue here.

[12] 476 Fed. App'x 786 (5th Cir. 2012).

sentences can be aggregated under § 4A1.2(k) if the constitutional protections of a formal revocation are met, and also if not.  I respectfully dissent.