PATRICK E. HIGGINBOTHAM, Circuit Judge,
dissenting:
Juan Carlos Castaneda Mendez was sentenced to ten years imprisonment for a burglary conviction. All but 180 days was suspended, with the remainder to be served as “shock probation.” Several years later while Castaneda Mendez was on probation, the judge modified the terms of his probation to require he spend 365 days in a substance abuse felony punishment facility (SAFPF). It is undisputed that the judge did not revoke Castaneda Mendez’s probation.
The main issue presented now is whether the district court, in calculating a sentencing enhancement for a prior term of imprisonment of one year and one month or more, may aggregate the 180 days Castaneda Mendez originally served with the 365 days in the SAFPF to reach the period required for enhancement. The Sentencing Guidelines specifically provide for ag *269 gregation of sentences in U.S.S.G. § 4A1.2(k), which states that “[i]n the case of a prior revocation of probation ... add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4Al.l(a), (b), or (c), as applicable.”
This is the precise scenario presented here, with the sole exception being that the constitutional protections of a formal revocation of probation were not provided. Having failed to meet the requirements for aggregation under U.S.S.G. § 4A1.2(k), the government urges us to disregard that provision altogether and aggregate Castaneda Mendez’s sentences under U.S.S.G. § 4A1.2(a)(l), a generic provision that says nothing about aggregation and simply defines “prior sentence” to mean “any sentence previously imposed upon adjudication of guilt.” This asks us to hold that a specific provision for the aggregation of sentences if and when probation has been revoked is of no moment. But “[a]s always, where there is no dear intention otherwise, a specific statute will not be controlled or nullified by a general one.”[1] In line with “our longstanding practice of construing statutes in pari materia,”[2] the provision in the same statute that deals precisely with the situation here — where an initial term of imprisonment is followed by probation and then by imprisonment when the terms of probation are violated— must be read together with the generic provision that simply defines “prior sentence” as “any sentence previously imposed upon adjudication of guilt.” If no “aggregation mechanism” is needed, as the government urges, § 4A1.2 is an odd statutory scheme indeed: one that provides for the aggregation of sentences when probation formally is revoked but also allows courts to aggregate sentences on no authority at all when probation merely is modified. This reading renders § 4A1.2(k) entirely superfluous.
Nor is the distinction between revocation and modification one without a difference. The meaningful differences between “modification” and “revocation” are not lightly dismissed by district court judges, and should not be by this Court. Revocation is a very different procedure than modification, a distinction appreciated by the Sentencing Guidelines themselves.[3] Before a revocation of parole or probation can occur, the Constitution weighs in, requiring that there be (1) a formal finding that a probationer has committed a violation and (2) a determination that the violation was serious enough to warrant reimposing the probationer’s original sentence.[4] *270 Because the consequences of the revocation process are serious, the probationer must be afforded an opportunity to present evidence to suggest that his violation does not warrant revocation.[5] Due Process requires both a preliminary hearing to determine whether there was reasonable cause to believe that a probationer violated the conditions of his probation, and if requested a final revocation hearing to determine whether revocation actually is warranted.[6] These procedural safeguards ensure that the more serious consequences of revocation — among many others, the aggregation of sentences under § 4A1.2(k) — are not imposed without Due Process safeguards. As Morrissey recognized, lower court judges and probation authorities are better positioned to determine, in their discretion, which sanction is appropriate for a defendant’s particular situation.[7] For this Court to gloss over § 4A1.2(k)’s explicit requirement that the more serious sanction of revocation be imposed before two sentences can be aggregated undermines the balance struck by the Sentencing Guidelines and by sentencing judges, and I decline to do so absent compelling justification.
The majority is mollified by a suggestion, not argued or briefed by either party, that the procedures for revocation of community supervision apply also to modifications under Texas Code of Criminal Procedure Article 42.12, and that these largely comply with the Due Process requirements applicable to parole and probation revocations. But while the requirement of a preliminary hearing under Tex. Art. 42.12 § 21 applies to both modifications and revocations, the similarity under Texas law ends there. Modification is addressed in 42.12 § 22; revocation is addressed separately under § 28, and only the latter mentions a right to appeal.[8] The Texas statute likewise grants more extensive powers to a judge who revokes community supervision under § 28, such as “proceed[ing] to dispose of the case as if there had been no community supervision,” consistent with the higher Due Process bar that must be met. Moreover, as the majority concedes, Ex Parte Carmona[9] recognized only that the Due Process protections outlined in Morrissey apply to revocation of community supervision — I find no authority that suggests Texas extends these same Due Process protections to mere modifications of the same.
I thus find persuasive the reasoning of United States v. Ramirez,[10] where it likewise was undisputed that parole was not revoked, insofar as it held that modification cannot serve as revocation of probation to aggregate sentences under § 4A1.2(k). While this decision stands alone in squarely deciding the issue pre *271 sented here, so does the Eleventh Circuit’s decision to the contrary in United States v. Glover.[11] But the Eleventh Circuit’s reasoning is unpersuasive insofar as it fails to provide a compelling justification for departing from the plain text requirement of “revocation” in § 4A1.2(k) and the distinctions drawn elsewhere — by Due Process as articulated in Morrissey, by district judges, and by the Sentencing Guidelines themselves — between modification and revocation.
Finally, the government urges us to look to Chavez,[12] an unpublished opinion where we held that modification of probation that required the defendant to attend a SAFPF for up to one year constituted a sentence of imprisonment for a sentencing enhancement under a different provision, U.S.S.G. § 2L1.2(b)(l)(B). But unlike Castaneda Mendez, who served an initial term of 180 days that the government seeks to aggregate with the later SAFPF term, the entirety of Chavez’s sentence was initially suspended. There being no multiple stays behind bars to aggregate, Chavez has little to say about the difficult aggregation question presented here.
I take no issue with the majority’s holding that an SAFPF qualifies as a term of imprisonment. But I cannot look past the plain text of § 4A1.2(k) in ignoring the specific for the general when the requirements of the former are not met. Nor can I accept the odd statutory scheme that results, in which sentences can be aggregated under § 4A1.2(k) if the constitutional protections of a formal revocation are met, and also if not. I respectfully dissent.

.Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (quotation marks and alterations omitted) (emphasis in original). See also, e.g., Hinck v. United States, 550 U.S. 501, 506, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007) (describing the "well-established principle” that “a precisely drawn, detailed statute preempts more general remedies” (internal quotation marks and citations omitted)); EC Term of Years Trust v. United States, 550 U.S. 429, 433, 127 S.Ct. 1763, 167 L.Ed.2d 729 (2007) (same); Radzanower v. Touche Ross & Co., 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.” (quoting Morton v. Mancari, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974))).

. Crawford Fitting Co., 482 U.S. at 445, 107 S.Ct. 2494.

. See, e.g., U.S.S.G. § 7B1.3 (explaining a court's discretion to revoke probation, on the one hand, or modify or extend its terms, on the other, and the factors and consequences that apply to each).

. Morrissey v. Brewer, 408 U.S. 471, 479-80, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (extending require *270 ments of Morrissey to probation revocation hearings).

. See Morrissey, 408 U.S. at 482, 487-88, 92 S.Ct. 2593.

. Id. at 486-88, 92 S.Ct. 2593.

. 408 U.S. at 480, 92 S.Ct. 2593 (The question whether revocation is necessary “involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts. This part of the decision, too, depends on facts, and therefore it is important for the board to know not only that sóme violation was committed but also to know accurately how many and how serious the violations were. Yet this second step, deciding what to do about the violation once it is identified, is not purely factual but also predictive and discretionary.”)

. Tex.Code Crim. Proc. Art. 42.12 § 23(b).

. 185 S.W.3d 492, 495-96 (Tex.Crim.App. 2006) (plurality op.)

. 347 F.3d 792 (9th Cir.2003).

. 154 F.3d 1291 (11th Cir.1998). Of the four cases cited by the majority opinion, only Glover explicitly addressed the modification versus revocation distinction that troubles us here. In the other three cases, the probationer was resentenced to probation after the period of incarceration. See United States v. Reed, 94 F.3d 341, 342-43 (7th Cir.1996); United States v. Glidden, 77 F.3d 38, 39 (2d Cir.1996); United States v. Galvan, 453 F.3d 738, 740 (6th Cir.2006) (noting that the court found it "telling” that an electronic monitoring condition of probation had to be "reinstated” after a prison term, in concluding that probation was constructively revoked despite the lack of specific terminology to that effect). This procedure is more in line with the common understanding of "revocation” and thus does not squarely present the difficult issue here.

. 476 Fed.Appx. 786 (5th Cir.2012).